No. 46.—MARY C. BEALL, administratrix, &c. plaintiff in error, *vs.* WM. H. BEALL and another, defendants.*

[1.] Where a private Act of the Legislature was passed, legitimatizing certain persons therein named, and authorizing them to inherit as lawful heirs of their reputed father, which Act was alleged to have been passed without the assent of such reputed father: *Held,* that on the trial of the question of the alleged fraud, in procuring the Act to be passed without such assent, it was competent for the party alleging the fraud, to prove that the Senator who was in the Legislature from the same County in which the reputed father lived, was present in the Senate, heard the bill read three times, and that he never heard any evidence of the assent of the reputed father to its passage, at that time.

[2.] *Held* also, that it was competent to prove by a witness who read from a newspaper, in the hearing of the reputed father, the title of the Act, that he angrily replied, "that he wished some people would attend to their own business."

[3.] Where a witness had been a security on an administration bond for a short time, and was discharged from all future liability by the Court of Ordinary: *Held,* that such witness was competent in a suit by persons claiming to be distributees of the intestate, against the administratrix, to prove in behalf of such administratrix that the complainants were not entitled to any share of the estate, and that the record of the judgment against such administratrix would not be even *prima facie* evidence of the liability of such discharged security, in a suit on the administration bond against him; there being no allegation in the record of any *maladministration* by the administratrix, *during the time the witness was such security.* In order to exclude the witness on the ground of interest, it must appear that the record would be legal evidence against him in some other action.

[4.] When requested to do so, it is not only the province, but the duty of the Court, on the trial of Equity causes, to instruct the Jury what portions of the defendant's answer are *responsive* to the allegations in the complainant's bill, so that the Jury may understand from the proper source, what is legal evidence for their consideration, and what is not legal evidence.

In Equity, in Upson Superior Court. Tried before Judge STARK, April Term, 1851.

This was a bill in Equity, filed by the defendants in error, for their distributive share of the estate of Alpheus Beall, deceased.

*NOTE.—For former decision in this cause, see 3 *Geo. Rep.* 210.

Beall *vs.* Beall and another.

The bill alleges, that complainants are the illegitimate children of Alpheus Beall; that they were legitimatized by an Act of the Legislature, passed in the year 1843, and that they were entitled to two-thirds of said estate, and Mary C. Beall, the administratrix and widow, to the other third; and concludes with the usual prayer.

The defendant, in her answer, admits " that a bill as set forth in complainant's bill, passed the General Assembly of the State of Georgia, and was sanctioned by the Governor, as charged in form, but she expressly denies that the same is an Act of the Legislature of said State, and of binding force as a law; and this defendant says to the best of her information and belief, and she expressly charges that the said pretended Act was procured to be passed wholly at the instance and request of said Frederick Beall, mentioned in complainant's bill," &c.

The defendant charges, in her answer, that the bill was passed by the Legislature without the knowledge and assent of Alpheus Beall.

On the trial, the defendant in the Court below, sought to prove by William Taylor, "that he was the Senator from Upson County in the Legislature of 1843, and that he heard the bill legitimatizing complainants, read three several times, and that he never heard any evidence of the assent of Alpheus Beall presented to the Senate." The Court rejected the witness, and counsel for defendant excepted.

The defendant proposed to prove by Charles W. Moore, that "immediately after the list of Acts of the Legislature of 1843 appeared in the papers, he in the presence of company, read the one legitimatizing complainants, to Alpheus Beall, when the said Beall angrily remarked, " that he wished some people would attend to their own business ; " when Moore retired, but soon after returned and asked Beall if his remark was intended for him, and he (Beall) said " certainly not." The evidence was objected to by complainant's counsel; the Court rejected it, and counsel for defendant excepted.

The defendant proposed to introduce Thomas F. Bethel and Benjamin Bethel, to prove the sayings of Alpheus Beall, going

to show that the said Act of the Legislature was passed without his assent and against his will, and also to impeach the testimony of Thomas Beall, a witness for complainants.

Counsel objected, because the witnesses were securities upon the administration bond of defendant. The Court sustained the objection, and counsel for defendant excepted.

Upon their *voir dire*, the Bethels testified that they were not interested in the event of the suit.

It appears that letters of administration were granted to the defendant on the estate of Alpheus Beall, in September, 1848, and the Bethels went her security upon the bond.

In January, 1849, it being represented to the Court of Ordinary of Upson County, that the bond was too small, the Court required the defendant to give a new bond in a larger amount, and ordered the old bond to be discharged for all future acts ; which she did—the Bethels not signing the new bond as securities. On the 21st April, 1851, the defendant executed to the Bethels, a bond of indemnity with good and ample security, indemnifying them for all loss as her securities, as aforesaid.

The cause being closed, defendant's solicitor requested the Court to charge the Jury, "that the Legislature *only* had the constitutional power to pass such a law as the one set up in the bill, by consent of Alpheus Beall." The Court refused so to charge, but did charge the Jury, "that the passage of such a law without the assent of Alpheus Beall, expressed or implied, is such a fraud as renders the law inoperative ;" and defendant's counsel excepted.

Counsel for defendant also requested the Court to charge the Jury, "that the answer of the defendant, responding to the charge in the bill in relation to the Act of the Legislature, is evidence for the defendant."

The Court refused so to charge, but instructed the Jury, "that, that part of the answer that set up the 'Act' to have been fraudulently passed at the instance of Frederick Beall, was not responsive, and was not evidence for the defendant." Counsel for defendant excepted.

Counsel for defendant requested the Court to charge the Jury, " that it is their province and duty to determine what portions of

the defendant's answer are responsive to the allegations in complainant's bill," which the Court refused to do, but did charge, that such was the province and duty of the Court; counsel for defendant excepted, and upon these several exceptions has assigned errors.

GIBSON and FLOYD, for plaintiff in error.

GOODE and CHAPPELL, for defendants.

*By the Court.*—WARNER, J. delivering the opinion.

The right of the complainants to a decree in this case, is based on the Act of the Legislature passed in 1843. This being a *private* Act, it is now assailed on the ground that it was fraudulently procured to be passed, without the *assent* of Alpheus Beall, whose property the complainants seek to inherit under it.

[1.] To establish the fact that Alpheus Beall did not assent to the passage of the Act of 1843, the defendant offered the evidence of Wm. Taylor, who was the Senator from the County of Upson in the Legislature, in the year 1843, to prove that fact, and also to prove that he heard the bill legitimatizing the complainants, read three several times, and that he never heard any evidence of the assent of Alpheus Beall presented to the Senate; which evidence so offered, was rejected by the Court, and the defendant excepted. This evidence, it is true, was *negative* in its character, but in a question of *alleged fraud,* we think it was admissible, as a *circumstance* from which the Jury might draw the inference that his assent was not given, especially when taken in connexion with other facts proved on the trial.

The witness was the immediate representative of Alpheus Beall, who resided in the same County with him, and it is usual to entrust the members of the Legislature from the respective Counties, with the management of such bills as relate to their

*local* wants or *private* affairs. The question is not as to the *weight* to which the evidence may have been entitled before the Jury, but the question is, was the evidence *competent* for the consideration of the Jury on the trial of the question made by the record? We are of the opinion it was *competent*, and ought to have been admitted.

[2.] The defendant then offered the testimony of Charles W. Moore, for the purpose of proving that soon after the list of the Acts passed by the Legislature of 1843 appeared in the newspapers, he read the one legitimatizing the complainants, in the presence of Alpheus Beall and others, when Beall angrily remarked "that he wished some people would attend to their own business." When witness asked Beall if the remark was intended for him, he replied, "certainly not." This evidence was rejected by the Court, and the defendant excepted.

This evidence, in our judgment, was competent for the consideration of the Jury, being a *circumstance* relating to the passage of the Act, which is now assailed for want of the *assent* of Alpheus Beall to its introduction and passage through the Legislature. What *effect* it might have had on the minds of the Jury, is another question.

[3.] The defendant then offered the evidence of Thomas F. Bethell, and Benjamin Bethell, to prove the sayings of Alpheus Beall, going to show that said Act of the Legislature was passed without his assent, and against his will, and also to impeach the testimony of Thomas Beall, a witness for complainants.

Their testimony was objected to, on the ground that they were securities for the defendant on her administration bond. The facts in regard to the competency of these witnesses at the time of the trial, are as follows: In September, 1848, letters of administration were granted to the defendant on the estate of Alpheus Beall, and the Bethells became her securities on her administration bond. In January, 1849, it was represented to the Court of Ordinary, that the bond given was for too small an amount, and the Court required bond and security for a larger amount, passing an order that the defendant should give a new bond for a larger amount, and that the old bond and the securi-

ties thereto, should be discharged from all future liability for the acts of the defendant as administratrix.   The Bethells were not her securities on the new bond, but she gave other securities.

The Bethells were only securities for the defendant, from September, 1848, until January, 1849, about four months.   On the 21st April, 1851, the defendant executed to the Bethells, a bond of *indemnity*, in the sum of $34,000, indemnifying them from all liability whatever, on account of their securityship on her administration bond, as above stated, with *ample security.* Both of the witnesses stated at the trial, on their *voir dire,* that they were *not interested* in the event of the suit, but that they had signed the first bond as securities, with Thompson Graham, as already mentioned.   The witnesses, upon the foregoing statement of facts, were rejected by the Court, and the defendant excepted ; and the question is, whether they were properly rejected, on the state of facts made by the record ?   In *Adams vs. Barrett,* (3 *Kelly,* 277,) this Court held, that to render a witness *incompetent* on the ground of *interest,* it must be shown that he will either gain or lose by the direct legal operation and effect of the judgment, or that *the record will be legal evidence* for, or against him, in some *other action,* and that the interest to exclude a witness, must be a present, certain, and vested interest, and not an interest *uncertain, remote, or contingent.*   The complainants have filed their bill in this case, against the administratrix of Alpheus Beall, to recover two-thirds of his estate, alleged to be in her hands.   There is no allegation that she has *wasted* any portion of that estate ; the only question in controversy between the parties, as shown by the record is, as to the right of the complainants to recover, as *legal distributees* of Alpheus Beall.   The witnesses offered by the defendant, were her securities on her administration bond, and they were offered, not for the purpose of showing she had properly administered the effects of the intestate, but for the sole purpose of *defeating* the complainants' legal right to recover any portion of the intestate's estate.   In such a case, the witnesses offered were *competent,* according to the rule, as stated by Mr. *Starkie,* for he says, " in an action against an administrator, one of his securities for the due administration of

the effects, is a competent witness to *defeat* the action, for the *bare possibility* that an action will be brought, is no objection to *competency.* 2 *Starkie's Ev.* 775. The author refers to the case of *Carter vs. Pearce,* (1 *Term R.* 163,) in support of that rule, which clearly and satisfactorily sustains it.

There being a *bare possibility* that an' action might be brought against the witnesses at some time, as sureties on the administration bond, is not sufficient, it would seem, under the *general rule,* to exclude them from testifying to the facts which they were called to prove in this case.

The defendants in error, however, insist that according to the rulings of this Court, the record of this suit against the defendant as administratrix, could be given in evidence in an action against the securities on the bond, and therefore, the witnesses were incompetent. It is true, that this Court has held, that in an action upon an administration bond against the securities thereto, the judgment or decree rendered against their principal, was *prima facie* evidence against them, but this Court never has held, that when securities to an administrator's or guardian's bond, have been *discharged* by the Court of Ordinary, that a general judgment or decree to account, rendered against such administrator or guardian, was even *prima facie* evidence that their principal had *wasted* the effects entrusted to them, *previous* to their discharge, unless that fact was *specially* alleged, and appeared on the *face of the proceedings;* but on the contrary, we held, in *Woods vs. Vason,* (1 *Kelly,* 89,) and in *Bryant, guardian, vs. Owen and wife,* (1 *Kelly,* 375,) that in order to make such discharged security even *prima facie* liable, the judgment or decree must *purport* to charge the administrator or guardian with some act of maladministration *before his discharge.*

That the judgment or decree, which may be rendered against the administratrix in this case, and a return of *nulla bona* on the execution issued thereon, would be *prima facie* evidence of waste on the part of the administratrix, is readily admitted, but at *what time ?*

To make the record even *prima facie* evidence against the *first* securities, it should appear on its face that the waste was

committed, or the acts of maladministration complained of, were done while the first securities were bound, and *before their discharge.* Inasmuch as this record does not show or allege any act of maladministration by the defendant, during the time of the first securities, the judgment or decree which may be obtained thereon, would not be even *prima facie* evidence, to charge them in a suit upon the administration bond; *non constat,* that any act was done by the administratrix during the four months the proposed witnesses were securities to her bond, that would make them liable in any manner whatever. The record of this judgment might be admissable, in a suit against the witnesses as securities on the bond, to prove *the fact* that such a judgment had been rendered against the administratrix, but not to prove, even *prima facie,* they were *liable* to pay the amount of it, for the reason, it does not purport to charge the administratrix with any act of maladministration while they were her securities. The distinction is between the admissability of the record of a judgment, to prove the fact *that such a judgment had been rendered,* and the admissability of the record of a judgment, to prove the *truth of any fact* on which such judgment is founded, so as to make it evidence for, or against, third persons, who were not parties to such judgment. The record of the judgment in this case, would not, in the view which we take of it, be even *prima facie* legal evidence against the securities on the first bond, and therefore, the general rule, as stated by the Court in *Carter vs. Pearce,* applies, and the witnesses offered did not have such a direct legal interest in the question, or in the record, as would render them incompetent, according to the ruling of this Court in *Adams vs. Barrett.* It is an established rule, that where the matter of interest is *doubtful,* the objection goes to the *credit* of the witness, and not to his *competency.* 1 *Greenleaf Ev.* §390. *Abrahams vs. Bunn,* 4 *Burrows' Rep.* 2255.

We are of the opinion, there is no error in the refusal of the Court to charge the Jury as requested, in relation to the *assent* of Alpheus Beal to the passage of the law, or in the charge as given.

The Court charged the Jury, "that the passage of the law in question, without the assent of Alpheus Beall, express or *implied*, is such a fraud as renders the law inoperative." The assent of Beall may be *implied* from his acts; as for instance, if it could be shown that he was in either House of the Legislature, and heard the bill read there, and made no objections, or any other act of like character, going to show that he had *knowledge* of the fact, and made *no objection*.

That portion of the defendant's answer which alleges that the Act of the Legislature was *fraudulently procured by Frederick Beall*, is not, in our judgment, *responsive* to the allegations in the complainant's bill, and therefore, is not evidence for her.

[4.] When requested so to do, it is not only the province, but the duty of the Court to instruct the Jury, what portions of the defendant's answer are *responsive* to the allegations in the complainant's bill, so that they may understand from the proper source, what is legal evidence for their consideration, and what is not legal evidence.

Let the judgment of the Court below be reversed.