Patrick K. Shiels *vs.* Wyatt W. Stark.

No. 63.—PATRICK K. SHIELS, plaintiff in error *vs.* WYATT W. STARK, defendant in error.

[1.] It is not only the province, but the duty of the Court, on the trial of equity causes, to instruct the Jury what portions of the defendant's answer are responsive to the complainant's bill, and what not. It is not a question of fact, but one as to the admissibility of evidence.

[2.] The Act of 1850, to prevent the Judges of the Superior Courts from expressing their opinion to the Jury as to what had or had not been proven, was not intended to prohibit the Courts from summing up the evidence, or directing the attention of the Jury to any particular portion of the testimony.

[3.] The answer of the defendant is evidence for him, not only when it is responsive to the call of the bill for discovery, but also when it is necessarily connected with the responsive matter, or explanatory of it.

[4.] Parol evidence is admissible, when it refers to matter entirely outside of the written contract, and not embraced in it.

[5.] A deed conveying an undivided moiety of a tract of land, is neither contradicted, varied, nor added to by parol proof, that the parties agreed both before and after the deed was written, to divide the land in a particular way, and that they did actually so divide it.

[6.] *Occupancy* by one co-tenant of the joint property, by the *consent* of the other, does not necessarily relieve him from the payment of the rent.

[7.] At Common Law, one tenant in common, was not liable to his companion, either for waste or the profits of the joint estate.

[8.] By the Statutes of Westminster, (2, 6, 22, *and* 4 *Anne C.* 16, *sec.* 27) joint tenants, and tenants in common, have an action for waste as well as an account for the profits ; and these Statutes are of force in Georgia.

[9.] In a contest for rent between joint tenants and tenants in common, the rule is to estimate the worth of the whole premises, and then the value of that portion occupied by the tenant in possession, in reference to the condition they were in, at the time he took possession.

[10.] In computing rent, it is immaterial what the element may be which contributes to the increase of value ; it may be a mansion, a mill-site, or its adaptation for agricultural purposes.

[11.] The shares of joint tenants and tenants, in common, are *prima facie*, equal : but the contrary may be shown by proof.

In Equity in Chatham Superior Court. Tried before Judge HENRY R. JACKSON, May Term, 1853.

Patrick K. Shiels filed his Bill on the Equity side of the Superior Court of Chatham county, alleging, that Wyatt W.

Stark and himself became the purchasers of a tract of land at the upper or Western extremity of Fig Island, containing about forty acres. The deed was made to Starke, who subsequently, by proper deed, conveyed one undivided half to Shiels. The bill alleged that by agreement, in the conveyance from Stark to Shiels, on any subsequent division, either party was to have the benefit of any improvements he might make upon the premises : that the only valuable portion of the said land was the upper extremity, suitable as a site for a steam sawmill. That W. W. Stark had taken exclusive possession of that portion of the land contrary to the express wishes of Shiels, and was proceeding to erect an expensive saw-mill thereon. The bill prayed a partition, and an account for the rent, since the possession of Starke ; and an injunction to restrain the farther erection of the saw-mill.

The answer of W. W. Starke admitted the material facts charged : but set up, that previous to the purchase, there was an understanding and agreement between himself and Shiels ; that they should purchase the land, to enable the defendant, Starke, to erect a steam saw-mill on the Western extremity, and to enable the complainant, Shiels, to continue and prosecute the lumber business on the remainder of the land. The answer denied the allegation that the balance of the land was valueless; and also the allegation that the preparations for erecting the saw-mill were made against the expressed objection of Shiels. On the contrary, that complainant, on various occasions urged the respondent to proceed to erect the mill ; pointed out to respondent the location for the mill ; and but two days before the commencement of these preparations, went with respondent to the spot and pointed out the advantages to the respondent in taking possession and erecting his mill ; and that no objection was ever made by complainant until respondent had expended near fifteen hundred dollars thereon, when complainant objected, as respondent believed, for the sole purpose of extorting a large sum from the respondent.

On the trial, evidence was introduced by both parties to sustain their respective allegations.

Patrick K. Shiels *vs.* Wyatt W. Stark.

In charging the jury, the presiding Judge, by way of explaining to the Jury what was meant by the answer being responsive to the Bill, read portions of the defendant's answer, which he considered responsive.    To which proceeding, complainant excepted and alleges the same as error.

The Court charged the Jury, that "If the defendant Starke took possession with the assent of Shiels, and under an understanding with him, although he may have taken possession of all that portion capable of producing rent, he is not liable for rent to Shiels."

To which charge, complainant excepted, and has assigned error thereon.

The Court farther charged, "That a parol agreement set up in the answer as to the mode of enjoying the land responsive to the allegations of the Bill, so far as it is so responsive, though made anterior to the written agreement put in evidence in the cause is competent evidence, if subsequently acted on by the parties."

To which charge complainant excepted, and has assigned error thereon.

LAW & BARTOW, for plaintiff in error.

H. WILLIAMS for defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

[1.] There is some confusion in the first assignment of error. It states that the presiding Judge, in charging the Jury by way of explaining to them what was meant by an answer in Equity being responsive to the Bill, read certain portions of the defendant's answer, which he considered as responsive.— And this is excepted to, and is now alleged as error.   In the original Bill of Exceptions, as corrected and explained by Judge *Jackson* himself, it stands thus: " To meet the call of the argument, I stated to the Jury what was meant by an answer responsive to the allegations of a Bill in Equity, and de-

signated one or two parts of the answer, as being, in my judgment, responsive : but left it for them to determine whether or not in point of fact they were responsive."

No fault is found by either party with the latter clause of this charge ; and yet it is obviously wrong ; and confounds, through inadvertence, of course, the relative rights of the Court and the Jury.   It was decided in *Beall vs. Beall* (10 *Ga. Rep.* 342) and such there can be no doubt is the Law, that " It is not only the province, but the duty of the Court, on the trial of Equity causes, to instruct the jury what portions of the defendant's answer are responsive to the complainant's bill, and what not; so that the Jury may understand from the proper source, what is the legal evidence for their consideration."   It is not a question of *fact*, but one as to the admissibility of testimony.

[2.] Nor do we see any thing in this charge which violates either the letter or spirit of the Act of 21st Feb. 1850, (*Cobb's Digest* 462) to prevent the Judges of the Superior Courts, from expressing or even intimating their opinion to the Jury, as to what has or has not been proved.   For myself, I may be permitted to say that in some parts of the State, this Statute has, in my humble opinion, received too strict a construction.   It never was intended to prohibit the Courts from summing up the proofs, or from directing the attention of the Jury to any portion of the evidence.   The presiding Judge must not say, nor assume, nor even intimate, that one fact or another has or has not been *proved*.   But this he must leave, and I think, very properly, to the unbiassed and uncontrolled opinion of the Jury.

[3.] The main question argued upon this assignment of error is, that those portions of the defendant's answer, to which the attention of the Jury was directed, were not responsive to the Bill.   They relate to the occupancy, by Major *Starke,* of the upper or Western end of Fig Island ; and of the forty acres of land bought for the joint use of the parties.

In the stating part of the Bill, Mr. Shiels, the complainant, alleges that Major *Starke,* " Contrary to the wishes of your

orator, and against his express objection, had taken possession of all the Western part of said land, and all the water privileges connected therewith, for the erection of a costly and expensive saw-mill thereon, and is now proceeding to erect the same; and that the said Wyatt' W. Stark has refused, and does refuse either equitably or justly to divide the said land or to pay to your orator a reasonable rent for his undivided half of the premises."

And then in the interrogatory part of the Bill, the defendant is required to answer "Whether he, (the said Wyatt W. Stark) is not now, *contrary to the wishes of your orator, and in defiance of his objections, in possession of all the Western part of said land,* and all the water privileges connected therewith; and whether he is not now proceeding in the erection of a costly and expensive steam saw-mill? whether he has not refused to have any division of the said tract or parcel of land, unless your orator would allow him to retain, as his portion, all of the said land suitable for the erection of steam saw-mills, with the water privileges necessary thereto? Whether your orator has not applied to and offered the said Wyatt W. Stark to rent him his undivided half in the Western end of said tract or parcel of land with the water privileges connected therewith, for a reasonable rent? and whether the said Wyatt W. Stark has not refused to pay or allow such past rent?"

To the charges thus made, and the interrogatories thus propounded, the defendant answers "That it is not true that he, contrary to the wishes of the complainant, and against his express objection, has taken possession of all the Western part of said island and the water privileges connected therewith: but on the contrary thereof, this defendant avers that he took possession of said mill-site and the water privileges adjoining, with the express desire and wish of the complainant, as often expressed to this defendant. That this defendant was repeatedly asked by the complainant, why did he not remove one of his mills there? And its advantages were pointed out to defendant by complainant. That the defendant, yielding at last to the representations of complainant, who went with defendant and sailed

around the point where the defendant has located his mill, and pointed out to defendant the proper line to drive pilings, and the proper place to locate his mill, only a day or two before the commencement of this defendant's operations.  And this defendant having a steam saw-mill on Skidaway Island, at great expense and trouble, took the same down and proceeded at a very heavy expense to have pilings driven in reference to the erection of said mill; and proceeded to have the necessary excavations and levellings made for said mill and its basins, upon the very spot where the said complainant had repeatedly, and but a few days before, advised this defendant to erect and locate them.  That defendant, if complainant had made any objection (although such objection would have been improper, unjust, and against the express contract of the parties) could easily have placed the said machinery, materials, &c., and located the said mill either on Hutchinson's Island, on his own land, or the land of another person, which was offered to him at the rent of one hundred dollars per annum.  That he proceeded with the knowledge of the complainant to place his materials and heavy machinery upon said point, and drive his pilings and excavate the necessary basin and prepare the foundation of said mill.  That he had expended in money, time and labor at least $1,500—the said Shiels having a full knowledge of all the facts, he being in sight every day the work was going on, and actually expressed the wish that this defendant should erect a good mill on said site," &c.

Believing as we do that the answer is responsive to the call of the Bill for discovery, touching the *occupancy* of the defendant; or at least that it was connected with and explanatory of said responsive matter, we hold that the same was properly admitted to go to the jury as evidence in the cause.

[4.] The next assignment which I shall notice, is the third exception on the paper.  The Court charged the Jury, that a parol agreement is swallowed up in a subsequent written contract relating to the same subject-matter; but that the parol agreement set up in the answer as to the mode of enjoying the land, although made anterior to the written agreement, yet if

subsequently recognized and acted on by the parties, was competent testimony.

[5.] The parol agreement does not contradict, or vary, or add to the written contract. The deed made by Major Stark to Mr. Shiels was for an undivided moiety of the land with a covenant that each, upon partition, should have full benefit of the improvements which he might respectively make. The deed conveys a title to an interest in land, making Mr. Shiels a tenant in common with Major Stark. The parol evidence refers to a distinct subject to wit: a *division* of the land, or rather to a *license* to enjoy a portion of the *land* by one of the tenants in common in a particular manner. Under this license, a heavy expenditure was incurred. The agreement was partially executed. Would it not be a fraud upon Major Stark not to allow this permission to be proved?

[6.] But the principal legal question remains yet to be considered. The Court charged the Jury, that if Major Stark took possession *with the assent* of Mr. Shiels, and under an understanding with him, although he may have occupied all the property capable of producing rent, still he was not liable for rent to his co-tenant.

The broad proposition which we understand the Court to lay down is this: that *occupancy* by one co-tenant of the common property, by the *consent* of the other, relieves him from the payment of rent. And some of the old authorities certainly maintain this doctrine—nay, some of the cases go quite beyond this, and hold that liability for rent cannot arise from *mere occupancy*. (*Sargent vs. Parsons*, 12 *Mass. R.* 153.)

[7.] According to the doctrines of the Common Law, one tenant in common was not liable to his companion, either for waste or the profits of the joint estate; although he may have embezzled the profits, or appropriated the whole to himself.

[8.] The injustice of this doctrine was obviated in England by the *Statutes of Westminster*, 2, 6, 22, and 4 *Anne C.* 16, *Sec.* 27. The first giving to joint tenants and tenants in common, an action for waste; and the second an account for the profits. (5 *Bac. Abr.* 304.) It is to be presumed, from the

reasonableness of their provisions, that these acts are in force in this State, as they are every where treated, as the general law of this country. It may, therefore, now be safely laid down as the Law, that a joint tenant or tenant in common, who commits waste, or who receives more of the rents and profits than come to his share, to be apportioned either according to his interest in the estate, or the value of that portion of the common property which he occupies, is liable to his co-tenant for the waste or for the excess of rents and profits above his share, under the Statutory provisions aforesaid, as well as the plainest principles of justice.

In opposition to the principle ruled in 12*th Massachusetts*, it is stated in *Dane's Abr.* 1 *vol. ch.* 8, *art* 3, *p.* 170, in treating of the action of account, "That it is not necessary that the defendant should have received profits *otherwise than by his occupancy*, in order to give a cause of action to the plaintiff upon the Statute of *Anne*. It is sufficient, if he have in any way received more of the issues or profits than comes to his just share and proportion."

And the Court say in *Thompson vs. Bostwell*, (1 *McMullen's Eq. Rep.* 75) "There is nothing, I think, in the objection that the defendants did not receive rent, but cultivated the lands themselves. To cultivate and have the use of lands *is to receive the rents and profits*, though the occupier is his own tenant."

[9.] Again: in the same case, the Court ask: "But what rule shall be adopted when one tenant in common, has occupied part of the premises himself? I know of no other, than to estimate the rent of the whole premises, and then value that portion of the premises occupied by the tenant, in possession, in reference to the condition they were in at the time he took possession. (*P.* 77.)

[10.] And in estimating the value of that portion of the joint-property, occupied by one of the co-tenants, with a view to the assessment of rent, it is immaterial what the element may be, which contributes to increase the value. It may be a mansion, a mill-seat, or its productiveness for agricultural

purposes. It must be computed as though the estate were let to third persons, as tenants. What the lease-hold would be worth in market, would be the proper test to determine whether one has received more than an equal share. All this is a proper subject-matter of proof.

Admitting, then, that Mr. Shiels did consent that Major Stark should occupy the western extremity of the island, for the erection of a steam saw-mill—not having the means himself, to use this valuable site for that purpose, should he enjoy it free of rent, unless the understanding between the parties went to that extent? We think not, most clearly.

[11.] I know that the shares of joint-tenants and tenants in common, are *presumed* to be equal. But one of the witnesses. sworn on the trial, testified that the rent of this mill site, was. worth from one thousand to fifteen hundred dollars at that time, and the half of that sum in 1849; and Mr. Gilmer, an Engineer in the United States service, proves the rent for the two preceding years, to be worth from six to seven hundred dollars. per annum. The lowest price put upon it, by the evidence of the defendant, was two hundred dollars a year. And as a. set-off to this, it was not shown, nor attempted to be proved,. that the balance of the premises was worth one cent.

It is not proper, therefore, to infer that in consenting to the occupancy of Major Stark, under these circumstances, Mr.. Shiels intended to waive his right to rent. At any rate, it. should have been submitted to the Jury, as a question of fact,, to be found by them.

There is another feature in this case, which should be considered in the future investigation of it. It appears from the answer of Major Stark himself, that Mr. Shiels proposed engaging in the lumber business; and that he would be content. with the water privileges connected with this property, or so much thereof, as might not be needed for his co-tenant's mill. And that this was the consideration which influenced Mr. Shiels to, suggest, in the beginning, the division, which he is alleged subsequently to have ratified. It seems, however, that some action has been had by the Commissioners of Pilotage, for the

City of Savannah, which is believed greatly to have depreciated the value of the Eastern portion of this purchase, for the lumber trade. If this be so—I do not say that it is; it is a matter of fact not yet ascertained and established—but I repeat, that if this be so, even if Mr. Shiels consented to the temporary occupancy of Major Stark, without the payment of rent, upon a consideration which has failed, either wholly or in part, would he not be entitled to remuneration in the way of rent, notwithstanding his agreement? In the decree which has been rendered for the partition of the premises, which commends itself for its equity, to our hearty approval, except as to the item of rent, respecting which, the Jury could not have found otherwise than as they did, under the instructions from the Bench, it is apparent that the Jury were of the opinion that the Western share of the land was of greater value than the Eastern, either from the condition of the two at the time the parties originally took possession; or from some supervenient cause, which has changed their relative value since. We think, upon the whole, that justice requires that this cause should be remanded for a re-hearing.