## MARTIN STETSON *versus* MARY DAY.

Under our present statutes, for waste committed or suffered by the tenant, the reversioner may have an action of waste to recover the place wasted, and the damages; or he may have an action of the case in the nature of waste to recover his damages only; but he cannot have both.

If the tenant for life neglects to pay the taxes assessed upon the estate during the tenancy, and thereby subjects the estate to a sale, he is liable in either of those actions.

If the tenant deems such taxes illegal, notice of that should be given to the reversioner, and he be indemnified against loss, if payment of the tax is to be resisted.

In an action for waste, the tenant cannot deny the validity of any sale for taxes, because under our statute the *reversioner* cannot do so, until he has paid or tendered the full amount of the tax, charges and interest, for which the sale was made.

Stetson *v.* Day.

CASE in the nature of WASTE.

ON FACTS AGREED, as stated in the opinion.

*Hinckley*, for plaintiff.

1. The estate is liable to forfeiture. R. S., c. 95, §§ 1, 2.

2. Neglect by the tenant to pay the taxes is waste. Greenl. Cruise, Tit. 3, c. 1, §§ 27, 28, 41; 4 Kent's Com., 74; *McMillan* v. *Robbins*, 5 Ham., 28; *Varney* v. *Stevens*, 22 Maine, 331.

. 3. The collector's certificate and treasurer's returns are *prima facie* evidence of the correctness of the proceedings in the sale. R. S., c. 6, § 149.

*E. Hale*, for defendant.

1. The plaintiff cannot enforce a forfeiture of the tenant's term *in this form of action*. R. S., c. 95, § 2; 4 Kent's Com., 79; *Smith* v. *Follansbee*, 13 Maine, 273; 1 Washburn on Real Prop., 119.

2. The sale was illegal, and plaintiff has suffered no damage.

The opinion of the Court was drawn up by

CUTTING, J. — This is an action on the case in the nature of waste; wherein the plaintiff claims, not only damages, but a forfeiture of the life estate. In this form of action he may be entitled to the former, but not to the latter. This is not an action of waste, which is a real action; but case, wherein the plaintiff can only seek compensation in damages.

In former years jurists have disagreed as to whether the statute of Marlebridge, 52 Hen., 3, by which damages for the waste done could only be recovered, was the common law of this country; or the statute of Gloucester, 6 Edw., c. 5, by which, not only the place wasted was forfeited, but also treble damages. The Court, in *Sackett* v. *Sackett*, 8 Pick., 307, held the latter to be in force in Massachusetts in 1829. But our Court, in 1836, in *Smith* v. *Follansbee*, 13 Maine, 273, seems to have come to a different conclusion as to its adoption in this State, especially, as it respects ten-

ants in dower, and remark, " we do not at present perceive any objection to the maintenance of an action on the case, in the nature of waste, against a tenant in dower ; but whether or not for permissive waste, may require investigation." In that case the action of waste was not sustained.

Such was the uncertainty of the law upon this subject until the revision of our statutes, in 1841, when, for the first time, by c. 129, § 1, it was enacted that — " If any tenant in dower, or by the courtesy, or tenant for life or years, shall commit or suffer any waste on the premises, the person having the next immediate estate of inheritance therein may have an action of waste against such tenant, wherein he shall recover the place wasted, and the amount of damages done to the premises."

Section 4. " Any person, entitled to such action of waste, may, instead of it, bring an action of the case in nature of waste ; in which he shall recover the damages he has sustained by reason of the waste."

The subsequent revision, in 1857, was similar in its provisions, with the exception of an omission of the last clause in § 4, which, no doubt, was considered to be superfluous, since, in an action of the case, the damages sustained are always recoverable. Thus, it will be perceived, that our present code authorizes two forms of action, the one similar to that created by the statute of Gloucester, with some modifications, and the other, to that provided for in the statute of Marlebridge, giving to the reversioner his option to seek redress in either form, but he cannot have both.

The present plaintiff has brought an action of the case, and, if he is entitled to recover, it can only be for damages sustained by reason of waste suffered by the defendant, the tenant in dower. The plaintiff alleges that the tenant has suffered the estate to be sold for the non-payment of the tax of 1858, and compelled him to redeem or forfeit his reversionary interest.

In *Varney* v. *Stevens*, 22 Maine, 331, it was held to be " the duty of the tenant for life to cause all the taxes assess-

Stetson *v.* Day.

ed upon the estate during his tenancy, to be paid; and, by neglecting it, and thereby subjecting the estate to a sale, he committed a wrong against the reversioner." The same principle is enunciated in other authorities cited by the plaintiff's counsel.

This case is presented on facts agreed; the material parts of which are as follows: " One *John Closson* of Blue-hill (where the premises are situated) has acted as the defendant's agent in the management of her said interest. The defendant has not been an inhabitant of said town since the conveyance of the reversionary interest to the plaintiff. The assessors of that town taxed the premises as non-resident in the year 1857. The treasurer advertised and offered the same at public auction, for sale, to pay the tax, but no bid was made therefor. Afterwards, and before the premises became forfeited to the town, the plaintiff paid the amount due to the treasurer, which sum was subsequently refunded to the plaintiff by the treasurer, the same having been paid him by said Closson as agent for the defendant. Said premises were again taxed to the defendant as non-resident by the assessors in 1858, and by reason of her neglect to pay said tax, they were sold by the treasurer to said Closson to pay the tax on Nov. 26th, 1859, and a deed was duly executed by the treasurer, dated on the 3d day of December following, subject to be retained by the treasurer until the right of redemption had by law expired. On July 9, 1860, said tax and costs amounting to two dollars and twelve cents, were paid by the plaintiff to the treasurer and the deed destroyed by him. Said Closson during the years said premises were so taxed, ever since and now is in the occupancy thereof, and taking the profits for the defendant."

From the foregoing facts, we may readily infer an intent by the defendant, or her agent, or both, to perpetrate a fraud on the plaintiff, whereby to obtain clandestinely the title to his reversion, otherwise why should not her agent have paid the tax of 1858 before any expenses had accrued,

instead of attending the sale, bidding for, and taking a deed of the premises in his own name?

At all events, as this Court have said in *Varney* v. *Stevens*, before cited, in thus "subjecting the estate to a sale, she committed a wrong against the reversioner," and, we may add, her agent a fraud in having the deed deposited in his own name with the treasurer, which might have become operative except for the plaintiff's vigilance, which fraud has not since been purged by an offer of reimbursement.

But it is contended by the defendant's counsel that the plaintiff has sustained no damage because the sale was illegal, there being no evidence offered of the qualification of the assessors, and the assessment of the tax, except what is disclosed in the treasurer's and collector's certificates, which, as also the specifications of defence, were made a part of the case.

It may be questionable whether under the agreed statement of facts it was necessary for the plaintiff to have offered any evidence; — the *tax*, the *sale*, and *the deed duly executed* appear to have been admitted. They were specifically alleged in the declaration, and not *specifically* denied in the specifications of defence; for a general denial is no specification. The relations between these parties are very similar to those between the mortgager and mortgagee, and upon this point we adopt the language of this Court in *Williams* v. *Hilton*, 35 Maine, 547. "It was the duty of the mortgager, and those holding under him to discharge all taxes thus assessed upon the demanded premises, while they withheld the possession from the mortgagee, and in case taxes were assessed in a manner which they deemed illegal, notice of this fact should have been given to the mortgagee, and in case payment was to be resisted he should be indemnified against loss, because it would be unjust to subject the mortgagee to the hazard of contesting the legality of a tax title by a suit at law, in which, if the final result should be in favor of the validity of that title, all his rights under his mortgage would be forever lost."

Suppose the plaintiff in this case had assumed the hazard of contesting the validity of the tax of 1858, permitted the time of redemption to expire and the deed to be delivered to *Closson*, against whom he must have commenced his action. " But no person shall be entitled to commence, maintain, or defend any action or suit at law or equity, on any ground involving the validity of any such sale, until the amount of all taxes, charges and interest, as aforesaid, shall have been paid or tendered by the party contesting the validity of the sale, or by some person under whom he claims." R. S., 1857, c. 6, § 145. So that the plaintiff would have been precluded from contesting *Closson's* title until he had paid or tendered to him the taxes, charges and interest. Therefore it is readily perceived that the plaintiff was in no condition to test the validity of the tax only upon its payment to whoever might have seen fit, whether rightfully or wrongfully, to have taken the treasurer's deed. Such was the situation in which the plaintiff was placed by the agent of the defendant; if not by her procurement, it was by her permission. The Legislature have at last provided a remedy against such a growing evil in these days of woman's rights, and it is the province of the Court to enforce it.

*Defendant defaulted.*

*Damages $2,12 and full costs.*

APPLETON, C. J., DAVIS, KENT, DICKERSON and BARROWS, JJ., concurred.