[Department One. — August 31, 1883.]

JAMES H. McCORD, ET AL., APPELLANTS, v. OAK-LAND QUICKSILVER MINING CO., RESPONDENT.

TENANTS IN COMMON OF A MINE — WASTE — DAMAGES — INJUNCTION. — One of several tenants in common of a mine, who does not exclude his co-tenants, may work the mine in the usual way, and extract ore therefrom, without being charge-able with waste, or liable to the other co-tenants for damages, and an injunction will not be granted at their instance to prevent the working of the mine.

ID. — ACCOUNTING. — If the tenant doing the work can be required to account to his co-tenants for a share of the profits, this can only be done in an action brought for the purpose of an accounting, and in taking the account, an allowance must be made for all proper expenditures in working and developing the mine and to protect the common estate. An action for damages on the ground of waste is not a proper action for an accounting.

APPEAL from a judgment of the District Court of the Nineteenth Judicial District, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Estee & Boalt*, for Appellants.

The removal of cinnabar from a quicksilver mine by one tenant in common, in possession, is waste as to the other co-tenants, not in possession. (*Merced Mining Co.* v. *Fremont*, 7 Cal. 321; *United States* v. *Parrott*, 1 McAll. 317; *Hill* v. *Taylor*, 22 Cal. 191; *Murray* v. *Haverty*, 70 Ill. 320; *Nelson's Heirs* v. *Clay's Heirs*, 7 Marsh. J. J. 140; *Izard* v. *Bodine*, 3 Stockt. Ch. 403; *Stetson* v. *Day*, 51 Me. 434; *Shiels* v. *Stark*, 14 Ga. 429; *Dougall* v. *Foster*, 4 Grant Ch. 328; Taylor's Landlord and Tenant, § 694; *Hawley* v. *Clowes*, 2 Johns. Ch. 122; *Twort* v. *Twort*, 16 Ves. 132; *Hole* v. *Thomas*, 7 Ves. 589; Freeman on Co-tenancy, § 302; *Symonds* v. *Harris*, 51 Me. 19; *Elwell* v. *Burnside*, 44 Barb. 447; *Delaney* v. *Root*, 99 Mass. 546; *Baker* v. *Whiting*, 3 Sum. 476; Bainbridge on Mines, § 436; Waterman on Trespass, § 947; *Dubois* v. *Beaver*, 25 N. Y. 127; *Critchfield* v. *Humbert*, 39 Pa. 427; *Hinds* v. *Terry*, Walk. Ch. 80; *Maddox* v. *Goddard*, 15 Me. 221; *McDonald* v. *Trafton*, 15 Me. 225; *Hubbard* v. *Hubbard*, 15 Me. 198; *Mills* v. *Richardson*, 44 Me. 79; *Harrison* v. *Blackburn*, 17 Com. B. N. S. 678; *Robertson* v. *George*, 7 N. H. 306; *Holmes* v. *Seely*, 19 Wend. 507; *Lienow* v. *Ritchie*, 8 Pick. 235; *Goodenow* v. *Ewer*, 16 Cal. 470; *Abel* v. *Love*, 17 Cal. 237; *Duryea* v. *Burt*, 28 Cal. 569; *Wheeler* v. *Wheeler*, 33 Me. 349; *Weld* v. *Oliver*, 21 Pick. 563; *Hyde* v. *Stone*, 9 Cowen, 230.)   Plaintiffs are entitled to damages to the full extent of their interest, without deduction for expenses. (*May* v. *Yappan*, 23 Cal. 311; *Barton Coal Co.* v. *Cox's Exrs.* 39 Md. 1; *Chipman* v. *Hibberd*, 6 Cal. 162; *Coleman's Appeal*, 62 Pa. St. 253.)

*Garber, Thornton & Bishop*, for Respondent.

It is not waste for one tenant in common to work a mine for his own use and benefit in a workmanlike manner. (Chitty's Blackstone, vol. 2, 281, 282; *Irwin* v. *Covode*, 24 Pa. St. 165;

*Findlay* v. *Smith,* 6 Munf. 142; *Woodward* v. *Gates,* 38 Ga. 213; *Drown* v. *Smith,* 52 Me. 143; *Crockett* v. *Crockett,* 2 Ohio St. 184; *Clemence* v. *Steere,* 1 R. I. 274; *Martyn* v. *Knowlys,* 8 Term Rep. 146; 2 Story's Eq. Jur. § 916; *Dodd* v. *Watson,* 4 Jones Eq. 51; *Crouch* v. *Puryear,* 1 Rand. 258; *Darden* v. *Cowper,* 7 Jones (N. C.) 210; *Roberts* v. *Roberts,* 2 Jones Eq. 128; *McLellan* v. *Jenness,* 43 Vt. 188; *Capner* v. *Flemington Mining Company,* 2 Green Ch. 469; *Den* v. *Kinney,* 2 South, 552; *Job* v. *Potton et al.* Law R. 20 Eq. 84; High on Injunctions, 241–244; *Hihn* v. *Peck,* 18 Cal. 643.)

The action cannot be maintained as an action of account at law, or as a bill in equity for an accounting. (*Pico* v. *Columbet,* 12 Cal. 420; *Goodenow* v. *Ewer,* 16 Cal. 471.) If an account should be allowed, offsets should be allowed against proceeds. (*Ruffners* v. *Lewis,* 7 Leigh, 738; *Walker* v. *Humbert,* 55 Pa. St. 407; *Graham* v. *Pierce,* 19 Gratt. 28; *Allen* v. *Barkley,* 1 Spear Eq. 264; *Van Horne* v. *Fonda,* 5 Johns. Ch. 388; *Brown* v. *Homan,* 1 Neb. 448; *Buckelew* v. *Snedeker,* 27 N. J. Eq. 82.)

McKinstry, J.— The complaint alleges that plaintiffs are and have been owners and tenants in common of "The Lost Ledge" mining claim, the plaintiff McCord owning two hundred three-thousandth parts thereof; the plaintiff Griffith, three hundred and sixty three-thousandth parts thereof; the plaintiff Gibbs, one hundred and thirty-three and one third three-thousandth parts thereof; the plaintiff Pond, sixty-six and two thirds three-thousandth parts thereof; and the defendant twenty-two hundred and forty three-thousandth parts thereof.

That the defendant, "without authority or permission of the plaintiffs, or either of them," has been and is in the exclusive possession and occupancy of the entire premises, and during such occupancy "defendant has ever refused, and still does refuse, to admit the plaintiffs, or either of them, to the possession or occupancy of said premises, as tenants in common with defendant or otherwise, and has and still does exclude the plaintiffs and each of them from any possession or occupancy of said premises or any part thereof."

That during the time defendant has been in possession as

aforesaid, it has been, and still is, without the consent or permission of either of plaintiffs, actively engaged and employed in mining in and upon said premises, and with a large number of men and machinery employed for that purpose, has been and still is excavating in and upon the premises, and constructing tunnels and shafts therein, and excavating large quantities of cinnabar therefrom, and cutting down and consuming and destroying growing trees and timber upon said premises, and thereby irreparably injuring and damaging said premises.

That the cinnabar so taken from said premises is of the value of one hundred thousand dollars and upwards.

That a large quantity of the cinnabar so taken from said ground by defendant has been by it reduced and converted into quicksilver, and the quicksilver by it sold and disposed of, and the proceeds converted by the defendant.

That the defendant has hitherto refused and still refuses to deliver to plaintiffs, or either of them, any part of said cinnabar or quicksilver, or to pay over to them, or either of them, any portion of the proceeds of said sales.

That defendant has been and still is engaged in cutting down and destroying the growing trees upon said premises, and converting the same into wood and timber, "which said defendant has been and still is using for purposes of fuel and in the construction of shafts, tunnels, machinery, and other structures in and about, carrying on its said business of mining in and upon said premises."

That the value of said trees, wood, and timber, so converted by defendant is about five thousand dollars, and that defendant has refused and still refuses to pay to the plaintiffs, or either of them, "any part or portion of such value."

That defendant has refused and still refuses to give plaintiffs, or either of them, any statement or information in detail "of the quantity or value of the cinnabar so taken from said ground, or of the quicksilver produced therefrom, or of the amount realized from the aforesaid sales of the same, or of the quantity or value of the trees, wood, and timber, so taken and converted as aforesaid."

That defendant threatens and intends to continue to prosecute, for its own use and benefit, the business of mining in and upon

the premises, and its excavations and diggings of cinnabar, and its reduction of the same into quicksilver, and the sale and conversion of the same, etc., and will so continue unless enjoined. That defendant has no *other* property, etc.

That by reason of the premises plaintiffs have sustained great damage, to wit, in the sum of one hundred and five thousand dollars, or thereabouts.

The prayer is: For an injunction, restraining and forever enjoining defendant from prosecuting "the business of mining" in or upon the premises, or from digging, excavating, or constructing shafts or tunnels in or upon the same, or from extracting cinnabar or other minerals therefrom, or from cutting down, injuring, or destroying any trees or timber upon said premises, or committing waste thereon in any manner; that plaintiffs and each of them be admitted to the occupation and possession of said premises as tenants in common with said defendant; that they recover of said defendant "the said sum of one hundred and five thousand dollars," for their damages, and that said damages " be trebled, in pursuance of section 732 of the Code of Civil Procedure," and for such other and further relief as the nature of the case may require, etc.

The court below found that the defendant had never claimed the entire mine, and had never excluded the plaintiffs from the common possession, and that plaintiffs had never entered, nor ever intended or desired to enter into the actual occupation. As the testimony was substantially conflicting we would not be justified in setting aside these or the other findings.

The material questions presented are:—

Does the excavation and removal of cinnabar from a quicksilver mine, or the cutting of timber trees used in working the mine, by one tenant, constitute *waste* for which his co-tenants may recover treble damages under section 732 of the Code of Civil Procedure?

Does such excavation and cutting and conversion constitute waste which should be enjoined?

Are the plaintiffs entitled to an accounting?

1. Section 732 reads: "If a guardian, tenant for life or years, joint tenant or tenant in common of real property, commit waste thereon, any person aggrieved by the waste may bring an action

against him therefor, in which action there may be a judgment for treble the damages."

In *Elwell* v. *Burnside,* 44 Barb. 447, it was said : "By the common law one tenant in common could not be guilty of committing waste; that is, the same acts which if committed by a tenant for life or years would constitute waste, would not be waste when committed by a tenant in common.   He was not liable to his co-tenant in an action for waste, for the injury done to their common estate.   As he is now, however, liable by statute (referring to a statute similar to the section of the Code above recited), to respond to his co-tenant in this form of action, *for those acts which constituted waste when committed by a tenant for life or years,* we must resort to the common law to ascertain whether the acts complained of in this case would be waste, had they been committed by a tenant for life or years."

In the case now before us the quicksilver mine had already been opened when plaintiffs and defendant became tenants in common.   If, therefore, it be conceded that under the provision of our Code a tenant in common is subject to the action in like circumstances as is a tenant for life or years, the plaintiffs cannot recover damages as for waste.   "As to all tenants for life, the rule has always been that the working of open mines is not waste."   And a tenant for life may open new pits or galleries without committing waste.   (*Neel* v. *Neel,* 19 Pa. St. 328.) A tenant for *years* is not guilty of waste in taking ore from the mine, the sole subject of the demise, during his term.   That is what he pays rent for.

It may be urged that, as between lessor and lessee for years, their *contract* contemplates the extraction of mineral, and in case of a life estate, the grantor or donor must intend that his grantee or donee shall receive some benefit from his estate.   But is it not also true from the very nature of mining property in this State, valuable only because of the mineral it is supposed to contain, that each of the co-tenants may use it in the only way it can be used?   The co-tenants out of possession may at any time enter into an equal enjoyment of their possession ; their neglect to do so may be regarded as an assent to the sole occupation of the other.   This is but another application of the principle announced in *Pico* v. *Columbet,* 12 Cal. 414.   True the co-tenants will not be

held to assent to the commission of waste by the sole occupant, but the question returns, what acts done by him are waste?

It cannot be doubted that on the part of a mere trespasser it is a wrong in the nature of waste to remove any ore from a mine. The cases cited by appellants fully sustain this proposition. But it is not a just inference that as between tenants in common the rule is the same. Section 732 of the Code of Civil Procedure does not relate to trespasses committed by those who have no interest in the property. Nor does it define "waste," or declare what acts committed by a guardian, tenant for life or years, or joint tenant, or tenant in common, as the case may be, shall be waste. For the appropriate meaning of the word, as applicable to acts done by these several classes of persons, we are relegated to the principles of the common law, and to various considerations of policy arising out of different conditions which the common law recognizes and approves.

The word "waste" is not an arbitrary term to be applied inflexibly without regard to the quantity or quality of the estate, the nature and species of the property, or the relation to it of the person charged to have committed the wrong. As was said by Roane, J., in *Findlay* v. *Smith*, 6 Munf. 134, "in considering what is waste in this country, it is to be remarked that the common law by which it is regulated adapts itself in this as in other cases to the varied situations and circumstances of the country. . . . . The law on this subject must be applied with reasonable regard to circumstances."

In the mining regions of this State where title to a lode can be acquired from a United States government only after work of certain value has been done upon it, can it be, that if one of several locators or owners shall assume the sole risk of developing the mine, he shall become liable to those who have taken no chance of possible loss, not only for an accounting as to net profits — supposing him to be fortunate enough to secure any — but also as a *tort feasor*, for three times the value of the whole, or for a proportionate share of the ore taken out?

It will be observed, upon the facts herein, no question arises as to unnecessary damage done to the mine or its works, by reason of reckless or unskillful management of the business by the tenant conducting it. There may be cases in which the

courts will impose damages for an abuse of his right by a co-tenant in occupation, or interpose to prevent such abuse.   But here the theory of plaintiffs is that defendant could not extract ore from the mine without committing waste, because such extraction is a destruction of the very substance of the estate; an irreparable injury to the inheritance.

In view of the character of the property, and of plaintiffs' implied assent to its sole occupation by defendant for mining purposes, we regard the right of the latter to the proceeds of its operations as partaking of the nature of an usufruct; the appropriation of the net returns as a legitimate participation of the profits, and its acts of mining as not impairing or consuming the estate to any greater extent than must be presumed to have been intended to be allowable by each of the parties in interest.

*Murray* v. *Haverty,* 70 Ill. 320, supposing it to have been correctly decided, does not entirely sustain the view of counsel for appellants.   That decision was based upon a statute which authorized a tenant to bring *trespass* or *trover* against his co-tenant who should "take away, destroy, lessen in value, or otherwise injure" the common property.   The section of our Code does not declare that a co-tenant who "shall take away," etc., shall be guilty of waste.   The question *waste or no waste* is left to the courts.   Besides, in *Murray* v. *Haverty* the court had already decided the case by holding certain evidence, as to license, inadmissible under the defendant's plea.

Counsel quote from Freeman on Co-tenancy: "In all cases where a co-tenant practically destroys the estate or some part thereof, trespass may be sustained by the injured co-tenant." (§ 302.)   But this is to be taken with other portions of the same work where the distinction is pointed out between an appropriation of the proceeds, rents, profits, or income, and the destruction of the estate itself.   (See also Waterman on Trespass, 947.) The tenant in common of a mine may occupy it for the purpose contemplated by all, even though a portion of the soil or ore be removed.   Each tenant has the right to *use* the mine, and, as was intimated by the Supreme Court of Pennsylvania, so long as an estate is used according to its nature "it is no valid objection that the use is consumption, and it is no fault of the tenant that it is not more endurable."   (*Irwin* v. *Covode,* 24

Pa. St. 162.) The taking of ore from the mine is rather the use than the destruction of the estate — within the meaning of the general rule. The results of the tenant's labor and capital are in the nature of proceeds, or profits, the partial exhaustion being but the incidental consequence of the use.

It is not necessary to examine in detail the many cases cited by appellants, as in none are the facts like those of the case at bar. We shall refer to a few of them.

*Delaney* v. *Root*, 99 Mass. 546, was an action of *trover* for the conversion of personal property. *Stetson* v. *Day*, 51 Me. 434, simply decides that, under a statute of Maine, a tenant for life, who neglected to pay taxes assessed upon the estate during his tenancy, and thereby subjected the estate to a sale, was liable to an action by the reversioner, either of *waste*, or of *case* in the nature of waste. *Maddox* v. *Goddard*, 15 Me. 219, and *Symonds* v. *Harris*, 51 Me. 14, were actions of trespass *quare clausum* for the destruction of a mill, and for the disseverance and removal of machinery from a mill; *Blanchard* v. *Baker*, 8 Me. 253, trespass on the case for a similar injury to common property; *McDonald* v. *Trafton*, 15 Me. 225, has no bearing upon any question involved in the case before us; and *Hubbard* v. *Hubbard*, 15 Me. 198, was a statutory action of trespass "for strip and waste" of timber.

As to the destruction of trees charged in the complaint herein, it has been expressly decided in California that, in the enjoyment of his legal rights in the common property, each co-tenant may cut timber, and use or dispose of it, at least to an extent corresponding to his share of the estate. (*Hihn* v. *Peck*, 18 Cal. 640.) In the case before us there is neither averment nor finding that defendant has cut or consumed more than its share. Besides, the use of the trees was merely *incidental* to the mining operations of defendant. In Pennsylvania it is held that the cutting of timber, to be used in a mine by tenant for life, whose *mining* is not waste, is not itself waste. (*Neel* v. *Neel*, 19 Pa. 23.) Nowhere is it held to be waste for a tenant in common of a farm to cut wood necessary to the use of the farm.

It was indeed held in New York by the Supreme Court that the cutting down of timber trees by one of several co-tenants, upon land whose principal value consisted of the growing

timber, was waste, for which the other co-tenants could recover damages under a clause of the Revised Statutes of that State. (*Elwell* v. *Burnside,* 44 Barb. 447.) But, aside from the rule to the contrary laid down in *Hihn* v. *Peck,* 18 Cal. 640, plaintiffs have no averment that the quicksilver mine is "principally valuable," because of the trees growing from its surface.

And here it may be added, applying the rule of *Hihn* v. *Peck,* it would seem each tenant in common of a mine is at least entitled to take out *his share* of the ore. That neither of the tenants can "look into the ground" may be a reason why a court of equity should order an account to be taken, but ought not to operate a prohibition upon the working of the mine by anybody.

2. Ought the court below to have enjoined defendant from proceeding with its mining?

"In case of joint tenants and tenants in common, with respect to whose acts of waste the common law has provided no remedy, courts of equity will interfere when it appears that waste has been committed or threatened by one tenant in common, who has become possessed of the whole premises." (Taylor's Landlord and Tenant, 694.) This general proposition may be conceded to be correctly stated, but the very question here is — has waste been committed? At the common law the tenant had no redress for acts of admitted waste committed by his co-tenant. But the latter might be restrained in equity from felling ornamental trees, or from doing other things amounting to wanton and destructive waste, which were called "equitable waste," because allowable at law. By our statute, however, a tenant may recover damages of his co-tenant in every case of waste. Holding as we do that the acts of defendant were not, under the circumstances, wanton or destructive, or any waste, it follows plaintiffs were not entitled to an injunction.

Counsel rely upon the opinion of the court of chancery of Upper Canada, in *Dougall* v. *Foster,* 4 Grant U. C. 319, where it was held (Esten, V. C., *diss.*) that one tenant in common would be restrained at the suit of his co-tenant from digging earth for bricks on the joint property. There the bill alleged that the portion of the lot from which the clay was being excavated and carried away was very valuable for build-

ing purposes, and that (with reference to such purposes) the lot had greatly deterioated in value by reason of the acts of defendant. In his opposing affidavit defendant did not deny the first of these alleged facts at all, and did not expressly deny the last. The chancellor said : " It is quite true that this court refuses to restrict a tenant in common from the *legitimate enjoyment* of the estate, because an undivided occupation is of the very essence of that sort of title (Co. Litt. 180), and to interfere with the legitimate exercise of that right would be to deny an essential quality of the title." The court held that the legitimate enjoyment of a building lot, " within the limits of the town of Belville," was to build upon it, or improve or occupy it as town property is usually improved and occupied; and that to dig holes in it, or degrade it below the surrounding level, was not such legitimate enjoyment. To repeat the language of Roane, J., (*Findlay* v. *Smith, supra*), " The law on this subject must be applied with reasonable regard to circumstances." If it had appeared in *Dougall* v. *Foster* that the common property was valuable only as a brickyard, and was acquired by the cotenants for that purpose, the case would have approximated more closely to the one at bar. By the laws of the United States the mining lands are disposed of under laws differing from those through which agricultural lands may be acquired. As a condition to their acquisition by individuals, it is requisite that the locators shall have done mining work of a certain value. They are disposed of and acquired for the purpose of mining, and the application of them to that purpose by one tenant in common is not *waste* of which the others can complain.

*Hawley* v. *Clowes*, 2 Johns. Ch. 122, was a bill for *partition*, and for cutting down and carrying away timber, not wanted for the necessary use of the farm. The injunction was granted, in view of the special character of the case, and the insolvency of defendant, and on the ground that the excessive cutting of timber was destructive, "and not within *the usual and legitimate* exercise of enjoyment." Chancellor Kent added : " The remedy is peculiarly appropriate and proper pending a partition of the very land.

In *Hole* v. *Thomas*, 7 Ves. 589, Lord Eldon, after saying, " I never knew of an instance of an application to stay waste

by one tenant in common against another; one tenant in common having the right to enjoy as he pleases," granted an injunction against cutting "saplings or any timber trees or underwood at unseasonable times"— that being destructive.   As was said by Esten, V. C., in *Dougell* v. *Foster*, it was *malicious* waste. *Twort* v. *Twort*, 16 Ves. 128, was a case where one tenant in common was an "occupying tenant" to another.   In *Baker* v. *Whiting*, the tenant in common was the agent of his co-tenants, and the case does not assist the present investigation.   (3 Sum. 485.)

It is said by Eden (Waterman's Eden on Injunctions, vol. 2, 3d ed. 210), the instances in which injunctions have been granted between tenants in common against committing waste are few.   The application has always been refused, unless attended with peculiar circumstances.   In *Smallman* v. *Onions*, 3 Brown Ch. 621, an injunction was granted against the cutting of timber, on the ground that the parties were only equitable tenants in common, the legal title being in a trustee; that therefore the person who was committing the waste had no title to the possession, and cutting the timber was a trespass upon the trustee; also that the trespasser was insolvent.   And in *Goodwyn* v. *Spray*, 2 Dick. 667, the lord chancellor denied an injunction prayed for by one tenant against his co-tenant cutting timber, saying the only remedy the plaintiff had was to get a partition.

In the absence of allegations, proofs, or findings of wilful injury, or of unnecessary injury or destruction caused by the negligence or unskillfulness of defendant, the plaintiffs were not entitled to an injunction.

3. Is this an action for an accounting?

It is established in this State that, in ordinary cases, an action at law cannot be maintained by a tenant in common against a co-tenant in sole possession of the premises, to recover a share of the profits derived from the estate by means of the labor and money expended by the party in occupation.   The occupation by one tenant, so long as he does not exclude his co-tenant, is but the exercise of a legal right.   The money he invests at his own risk; if his transactions result in a loss he cannot call upon his co-tenant for contribution, and if they result in a

profit his co-tenant is not entitled to share in such profit. (*Pico* v. *Columbet*, 12 Cal. 414.) The demand of the plaintiffs is not for a sum due by way of rent from defendant as the tenant of their interest, nor is it for a proportionable share of an amount received by defendants for the use and occupation of the premises by third persons, nor is an account sought as an incident to a claim for *partition*. It is not for their part of moneys received by defendant which belong to all the tenants in common, nor is it based upon an allegation of any of the exceptional facts mentioned in *Pico* v. *Columbet*, 12 Cal. 414; in *Goodenow* v. *Ewer*, 16 Cal. 461; and in *Abel* v. *Love & Fowler*, 17 Cal. 233. (See also *Howard* v. *Throckmorton*, 59 Cal. 89.)

Nor is the present an action brought to recover a portion of the profits acquired by the expenditure of defendant's money, treating it as the agent of plaintiffs in developing the common property. There is no pretense of an averment of any actual contract between plaintiffs and defendant, whereby the latter was authorized to act for the former. On the contrary, it is expressly alleged in the complaint that the acts of defendant were against the will of plaintiffs, and without their consent.

Again, the tenant in occupation is not made the *bailiff* of plaintiffs, in the absence of a contract of agency, by any statute of this State. The statute of Anne (4, 5, 16) has never been adopted here, and if it had been adopted that statute would seem only to have applied to cases where one tenant in common had received from a third person money, or other thing of value, to which both tenants were entitled by reason of their co-tenancy, and retained more than his just share according to the proportion of his interest. (*Pico* v. *Columbet, supra; Henderson* v. *Eason*, 9 Eng. L. & Eq. 337.)

If the appropriation by defendant of the net proceeds of its enterprise be considered as *merely* the legitimate perception of the profits, the action cannot be maintained as an action for an account.

*Izard* v. *Bodine*, 3 Stock. 403, cited by counsel for appellants, does not sustain their view. There the bill was for partition and account. The Supreme Court of New Jersey held: 1. If one tenant in common *oust* his co-tenant, the latter must first establish his right at law, and thus recover the mesne profits —

"for one tenant is bound to account to another only as his bailiff appointed by contract, express or implied." 2. Where one tenant in common "actually receives" the rents, issues, and profits, then he may be compelled to account for such profits actually received. (From third persons.) But, this by statute, both in England and this State, and not by the common law. (4 Anne, c. 16; New Jersey Act of 1794; *Sargent* v. *Parsons*, 12 Mass. 149.) 3. Where one tenant actually occupies the whole estate, without claim on the part of his co-tenants *to be admitted into possession*, he is under no obligations to account— "for he has a right to such occupancy." (Citing, Co. Litt. 200, *b*; *Sargent* v. *Parsons*, 12 Mass. 149; *Meredith* v. *Andres*, 7 Ired. 5; *Colburn* v. *Mason*, 25 Me. 434.)

Appellants also refer to *Nelson's Heirs* v. *Clay's Heirs*, 7 Marsh. J. J. 139.) But in that case the court after saying that a statute of Virginia which, like the English statute, authorized "actions of account in favor of one joint tenant or tenant in common against another, as his bailiff, for *receiving* more than his just share," was in force in Kentucky, held that the statute did not apply when the estate, at the commencement of the tenancy in common, yielded no rent, or profits, and one of the tenants entered, and by improving the estate rendered it productive; the other co-tenant having expended neither money nor labor.

In *Shiels* v. *Stark*, 14 Ga. 436, the court adjudged that, under the statute of Anne, in force in Georgia, a tenant in exclusive occupation was liable to his co-tenant for a proportionate share of the value of the use and occupation; admitting that it had been held in Massachusetts (*Sargent* v. *Parsons*, 12 Mass. 149), that, under the statute of Anne, it is necessary to charge the defendant with having received rents and profits "otherwise than by his occupancy." We do not find the language attributed to Dane by the learned court of Georgia (Dane's Abr., 1 vol. ch. 8, art. 3, p. 170), in our edition of the work referred to. *Shiels* v. *Stark*, was a bill in equity for a *partition*, and an account.

If it be conceded that the peculiar nature of mining property of itself constitutes such an *equity* as that the tenants, who could at any time have entered into the joint possession, but who have never expended labor or money upon the common property,

or become liable for any portion of the loss which might have followed upon the enterprise of their co-tenant, ought to be entitled to demand an accounting from the latter, and to recover a portion of the net profit gained exclusively by its efforts and capital — the present is not an action for such an accounting. The defendant is charged with having irreparably injured the premises by taking therefrom cinnabar of the value of one hundred thousand dollars, and cutting thereon growing trees of the value of five thousand dollars. The plaintiffs aver they have been damaged in the sum of one hundred and five thousand dollars, and pray, amongst other things, that they may have a judgment for three times that sum. It is alleged that defendant has converted the cinnabar, and the proceeds of sales of it, and the trees, and "has refused to deliver to the plaintiffs any part of the cinnabar taken from said ground or the quicksilver so produced therefrom, or to pay over to them any portion of the proceeds of said sales, and denies to the plaintiffs and each of them any share or interest in the same." But neither this nor any other averment found in the complaint makes the action one for an account, legal or equitable. The averments in the complaint, except in so far as they constitute a declaration in ejectment (and as we have seen the court below found that defendant had never disseized or ousted the plaintiffs), are of facts alleged by plaintiffs to establish *waste*, committed by defendant upon the common property, for which treble damages are asked.

Nevertheless, since the property is described in the complaint and the exclusive occupation and working of the mine by defendant averred therein, and inasmuch as the court below *did in fact* take an account, we have looked into the findings and evidence with respect thereto.

We have said that the net proceeds from the working of the mine were rather in the nature of profits from the use than the result of the destruction of the inheritance. But it may be conceded, for the purposes of this decision, that the relation of the tenants in common, under the circumstances disclosed, is *sui generis*, and their rights peculiar. That while the extraction of ore from the mine by one tenant, who does not exclude his co-tenants, is not waste, and the neglect of the latter to enter should be held an assent on their part to the exclusive occupa-

tion by the former; yet, because the effect of the exclusive working by one may be to exhaust the mineral, and the uncertainty of the prospective value of the property may render it impossible to make a just partition of it, a court of equity should order an accounting; holding that, while it must have been contemplated by the parties that the tenant in occupation should not be held for waste, nor prohibited from proceeding with his work by the co-tenants who do not seek to enter, yet it must also have been contemplated that the tenant in occupation should not appropriate to himself the entire profits.    If this be so, however, the co-tenants, not in actual occupation, applying for such account should at least be required to do equity — to allow to the defendant all sums actually expended for the protection of the common property.

The court below found :   "That defendant has taken from said mine, since the 18th day of March, 1876, a great number of tons of ore, and has taken therefrom a large sum of money, and that all thereof has been expended in the proper, economical, and necessary development and working of said mine for said ore, and in the proper, economical, and necessary reduction of the said ores, and in properly, economically and necessarily defending at law the common title to said property, and in proper payment for an outstanding title thereto."

The parties here are not mining partners, between whom an accounting is sought.   If they can properly be termed partners "in the profits" (see the *dictum* in *Abel* v. *Love, supra*), they have not by the averments of their complaint declared themselves partners in any broader sense.   By filing their complaint they did not make themselves liable to the defendant, or to creditors of defendant, in case the account of defendant's transactions should show such transactions had resulted in a loss; they did not make the defendant their agent as to debts by it created beyond the proceeds from its mining, nor did they subject their interest in the mine to any debts of its creation.   In their complaint they impliedly, if not expressly, disavow any such purpose.   If the plaintiffs here are entitled to an account, their claim to it is based upon special equities; their appeal to the court of equity is on the ground that defendant ought, under the peculiar circumstances, to pay them a share of the

profits. It would seem plain that an equity is in turn imposed upon them to allow a rebate for expenditures, necessarily incurred in protecting the common possession and in buying in an outstanding title, paramount to that of the co-tenants, or such as a prudent man would deem it proper to purchase to avoid expensive and dangerous litigation.

4. Conceding, for the sake of the argument, such an action might have been maintained, the present is not an action to recover rent of defendant as successor to the tenants previously in occupation.

Judgment and order affirmed.

Ross, J., and McKee, J., concurred.