ANACONDA COPPER MINING COMPANY, Respondent, *v.* BUTTE & BOSTON MINING COMPANY, Appellant.

| 17 | 519 |
| 18 | 176 |
| 18 | 177 |
| 18 | 489 |
| 17 | 519 |
| 20 | 448 |
| 20 | 526 |
| 20 | 531 |
| 21 | 44 |
| 17 | 519 |
| 24 | 130 |
| 24 | 132 |
| 24 | 487 |
| 17 | 519 |
| 25 | 77 |
| 25 | 106 |
| 25 | 143 |
| 17 | 519 |
| 28 | 15 |
| 17 | 519 |
| 32 | 512 |

[Submitted February 7, 1896.  Decided February 24, 1896.]

INJUNCTION—*Discretion.*—The granting of a preliminary injunction, *pendente lite,* being so largely a matter of discretion, will be sustained on appeal where there was a reasonable showing in support of plaintiff's application in the lower court. (*Klein* v. *Davis*, 11 Mont. 155; *Bluebird Mining Co.* v. *Murray*, 9 Mont. 475; *Nelson* v. *O'Neal*, 1 Mont. 284; *Atchison* v. *Peterson*, 1 Mont. 561, cited.)

MINES AND MINING—*Mining partnership—Tenants in common.*—A mining partnership exists under sections 3350, 3351, Civil Code, when there is (1), an ownership of the interests in a mine by two or more persons for the purpose of working it, and (2), when such owners actually engage in working the mine; therefore, where the plaintiff owns the undivided three-fourths of a mining claim and the defendant the other one-fourth, and likewise an adjoining claim, through which by underground workings, it is extracting the ores from a vein alleged to have its apex in the claim in which they are cotenants, and is appropriating such ores to itself and excluding the plaintiff from such disputed portion of the mine, a mining partnership does not exist, since it lacks the second essential condition of the relation, the actual working of the mine by the owners.

SAME—*Tenants in common—Section 592, Code of Civil Procedure, construed.*—By the enactment of section 592 of the Code of Civil Procedure (1895) providing that for injuries to property held in joint tenancy or tenancy in common, the party aggrieved shall "have his action for the injury," in the same manner as though such tenancies did not exist, it was the legislative intent to extend to all appropriate actions the remedies,

which, in such cases, were restricted by the former statute to trespass and trover.

SAME—*Same—Section 592, Code of Civil Procedure, construed.*—Where one of two tenants in common of a mine, owns an adjoining claim, from which, by means of a shaft and underground workings, he extracts the ore from the vein in which they are cotenants, appropriating it to his own use, this is an assumption and exercise of exclusive ownership over the property which the tenant aggrieved thereby may restrain by injunction, under section 592 of the Code of Civil Procedure, providing that if any person shall assume or exercise exclusive ownership over any property held in tenancy in common, the party aggrieved may have his action for the injury in the same manner as if such tenancy in common did not exist.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION for an injunction to restrain mining upon the disputed portion of a vein, and for damages. Plaintiff's application for a temporary injunction was granted by SPEER, J. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an appeal from an order of the district court, granting a temporary injunction in favor of plaintiff and against defendant pending the final determination of the case. Each party is a mining company operating in the Butte district. The plaintiff owns an undivided three-fourths interest in the Wild Bill mining claim. The defendant owns the other one-fourth in that claim, and also owns the Grey Rock claim. The Wild Bill lies north of the Grey Rock, and its south side line is the north side line of the Grey Rock, as far as the contentions of this case are concerned.

Plaintiff brought this action against defendant, claiming that defendant had, by deep underground workings, extracted ore to the value of $500,000 from a portion of a vein, the apex of which portion was within the Wild Bill location. Plaintiff claimed damages for three-fourths of this sum, to wit, $375,-000. It also prayed for a perpetual injunction restraining the defendant from extracting ore from the portion of the vein above mentioned, and also asked, as above noted, for a temporary injunction. A hearing was had on the application for a temporary injunction. Evidence was taken, and maps and plats introduced, indicating the situation existing between the two claims. The injunction was granted. Defendant appeals.

*Forbis & Forbis,* for Appellant.

*W. W. Dixon* and *William Scallon,* for Respondent.

De Witt, J.—There was very little testimony taken upon the hearing of the motion. The court, in its order, found, as best it could from what testimony there was, the point where the vein crossed the common side line between the claims, and enjoined the defendant from working on the dip of the vein westerly from the point so found. The controversy of fact in this case appears from the pleadings to be whether the vein from which the defendant is alleged to have taken the ore has its apex in the Wild Bill or the Grey Rock ground. Of course, this question of fact could not be, and was not expected to be, fully determined upon such preliminary hearing. Each party made its own claims, and set forth by testimony of witnesses its reasons for holding that the apex was in its own ground.

The granting and refusing of preliminary injunctions *pendente lite* is a matter so largely in the discretion of the lower court (*Klein* v. *Davis,* 11 Mont. 155; *Blue Bird Mining Co.* v. *Murray,* 9 Mont. 475; *Nelson* v. *O'Neal,* 1 Mont. 284; *Atchison* v. *Peterson,* Id. 561) that we feel satisfied in this case that there was sufficient testimony offered in the district court to sustain the granting of this preliminary injunction. It was not to be expected that the court, upon such a hearing, could determine with any degree of finality the course, strike, or dip of the vein; and we are of opinion that a reasonable showing in the judgment of the district court, to support plaintiff's contention, should be sufficient. In fact, but little point is made by the appellant upon this branch of the case. Its principal contention is upon the question of cotenancy; that is to say, the cotenancy in the portion of the vein from which the ore was extracted, if it be the fact, as plaintiff contends, that that portion of the vein has its apex in the Wild Bill ground. Of course, if the apex is in the Grey Rock ground, plaintiff has no interest in this ore, and there is no cotenancy. But at the present stage of proceedings we feel obliged to temporarily adopt the preliminary view of the district court,—that the

apex of the disputed portion of the vein is in the Wild Bill ground. Then the parties are cotenants of that portion of the vein from which the ore was extracted. The plaintiff owns an undivided three-fourths of the premises, and the defendant, the other one-fourth.

There was some argument on the hearing in this court, and apparently considerable on the hearing below, upon the question of a mining partnership. The statute upon mining partnerships (sections 3350-3359, Civil Code of 1895) is new in this state, although practically the same statute has been in force in California for many years. The sections in that statute which are important in this consideration are as follows:

"Sec. 3350. A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom, actually engage in working the same.

"Sec. 3351. An express agreement to become partners or to share the profits and losses of mining is not necessary to the formation and existence of a mining partnership. The relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the minerals therefrom.

"Sec. 3359. The decision of the members owning a majority of the shares or interests in a mining partnership binds it in the conduct of its business."

Some contention is made by respondent that it, owning three undivided fourths of the mine, should control its operation, under the law of mining partnerships. (Section 3359.) But we will say at the outset that in our opinion a mining partnership did not exist between plaintiff and defendant in this case. An analysis of sections 3350 and 3351 makes this clear. A mining partnership, under the statute, is very different from an ordinary partnership. There is usually, practically, in a statutory mining partnership, no *delectus personarum* (*Dougherty* v. *Creary*, 30 Cal. 300), as there is in ordinary partnerships. An ordinary partnership is formed by contract be-

tween the partners. A mining partnership is formed by reason of the existence of certain facts described in the statute. Those facts are:

(1) That two or more persons shall own or acquire a mining claim for the purpose of working it, and extracting the minerals therefrom (section 3350, Civil Code); that is to say, the relation arises from the ownership of the shares or interests in the mine. This is the first fact as a foundation for a mining partnership.

(2) The second fact required to exist is that such owners actually engage in working the mine.

Do these two conditions exist in the case at bar? The first condition is a fact. Plaintiff and defendant own, and have acquired for mining purposes, the ground in controversy. The second fact does not exist. The plaintiff and defendant were not actually engaged in working the mine. This is clear from the pleadings and the testimony. The defendant was working the disputed portion alone, and excluding the plaintiff therefrom. Therefore the partnership did not exist. (*Dougherty* v. *Cleary*, 30 Cal. 291; *Henderson* v. *Allen*, 23 Cal. 519; *Duryea* v. *Burt*, 28 Cal. 569; *Hawkins* v. *Mining Co.*, 2 Idaho 970, 28 Pac. 433.) The same views were expressed in *Nolan* v. *Lovelock*, 1 Mont. 224, without the existence of the statute.

In the Idaho case last cited, there is one remark tending to indicate that the court held a different view; but the court stated that a partnership was admitted by the defendant in that case, and in the opinion, further on, cites with approval *Dougherty* v. *Creary* and *Duryea* v. *Burt*, *supra*. We therefore consider the question of a mining partnership as not in this case.

We are also of opinion that the question of waste need not be considered in this decision. It is alleged that the defendant is taking the ore from the mine. Taking ore from a mine in a skillful, careful, and miner-like manner has been held, in states where mining litigation has been most frequent, not to be waste, but, upon the other hand, to be use. The reasons

for so holding are well set forth in *McCord* v. *Mining Co.*, 64 Cal. 134, 27 Pac. 863, and in the cases cited in the opinion in that case.   We note particularly the Pennsylvania cases cited therein, as coming from a state possessing not only an able judiciary, but also one having had a wide experience in the subject under consideration.   But we need not consider the question of waste, in this decision, for the reason that we are of opinion that this injunction order must be sustained under the provisions of section 592, Code of Civil Procedure, 1895, without regard to the question of waste.   That section is as follows:

"Sec. 592. If any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value or otherwise injure or abuse any property held in joint tenancy or tenancy in common, the party aggrieved shall have his action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist."

This statute, in its present form, is absolutely new in this jurisdiction, and we have not been referred to any other state where it exists.   It came in with the Code of Civil Procedure, July 1, 1895.   It is not construed in the case of *McCord* v. *Mining Co.*, 64 Cal. 134, 27 Pac. 863; nor *Murray* v. *Haverty*, 70 Ill. 319; nor *Hawkins* v. *Mining Co.*, 2 Idaho 970, 28 Pac. 433,—all cases which were called to our attention upon the argument.

Mr. Freeman remarks, in his work on Cotenancy and Partition (section 249a):   "The right to occupy and use mining property has been so rarely the subject of judicial discussion and decision that it cannot yet be regarded as settled."

It is apparent, and, indeed, it is conceded by counsel, that section 592, Code of Civil Procedure, above quoted, works a change in the common law, upon the question of joint tenancy and tenancy in common.   The contention has been as to what, and how great the change is.   For many years before the enactment of this statute we had the following law:

"Sec. 1295.   If any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value,

or otherwise injure or abuse any property held in joint tenancy, tenancy in common, or coparcenary, the party aggrieved shall have his action of trespass or trover for the injury in the same manner as he would have if such joint tenancy, tenancy in common or coparcenary did not exist.     (Compiled Statutes, 1887.)

This law existed long before the compilation of 1887.   The difference in the statutes is this:   From the later statute are omitted the word ''coparcenary'' and the words ''trespass or trover.''   Therefore the old statute provided that a party aggrieved, under the provisions of above section, should ''have his action of trespass or trover.''  The later statute provides that ''he shall have his action,'' and does not limit it to ''trespass or trover,'' or any other particular action, but states simply that the party aggrieved shall have his action for the injury.   Is it not perfectly apparent that the legislature considered that the remedy given by ''trespass or trover'' was too narrow and too restricted, and that it intended to extend the remedies of the party aggrieved?  The legislature seems to have deliberately said that a party aggrieved is not confined, for his remedy, to trespass or trover, but may have his action; that is, an appropriate action for the injury.   Section 592 names several causes for which the party aggrieved may have his action.   They are stated in the disjunctive.   If one of them exists, he may have his action.   The causes are, ''if any person shall assume and exercise exclusive ownership over any property held in joint tenancy,'' etc., or ''take away,'' etc., or ''destroy,'' etc., or ''lessen in value,'' etc., or ''otherwise injure or abuse,'' etc.   As noted, these causes are stated in the disjunctive.   Certain of them are immaterial to consider in this case; that is to say, as far as this decision is concerned, we may strike out from the statute the words, ' or take away, destroy, lessen in value, or otherwise injure or abuse.''   Then the statute, as applicable here, would read:

''Sec. 592.   If any person shall assume and exercise exclusive ownership over any property held in joint tenancy, or tenancy in common, the party aggrieved shall have his action

for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist.''

It must be remembered, again, at this point, that we are treating the case now, at this preliminary stage, under the view that it is the fact of the case, as now before us, and as found by the district court, that these parties are cotenants of the disputed ground. We think it is clear, from the pleadings and the evidence, that the defendant has assumed and exercised exclusive ownership over the property thus held in cotenancy. Defendant was working on the disputed portion of the vein, 1,000, 1,100 and 1,200 feet underground, and claiming it as its own. It was working it from its own shaft and approaches, which were on its own Grey Rock claim. It certainly was excluding the plaintiff from any exercise of ownership over this disputed portion, and was exclusively assuming and exercising such ownership. Therefore, the first cause named in section 592 for giving the action to the cotenant existed.

The next matter for construction in the statute is the language, ''the party aggrieved.'' In one of the briefs submitted in this case it is contended that there is no party aggrieved; that the defendant is not aggrieved unless waste or injury is committed. But we are of opinion that the grievance is the assuming and exercising exclusive ownership over the property. That is one of the grievances named by the statute. Waste, injury and destruction are other and separate grievances. All the grievances need not exist. One is sufficient. One here exists, and it is one of those grievances named in the language of the statute itself. Therefore we are of opinion that the plaintiff here is the party aggrieved, and that it is aggrieved by the defendant's assumption and exercise of exclusive ownership.

The next language of the statute for consideration are the words, ''shall have his action.'' This matter we treated above, and expressed the opinion that the change made in the statute by the Code of 1895 extended the right of action by the party aggrieved; that he is no longer confined to trespass and trover, but that he has any appropriate action for the injury.

The next question is this :  How does he have this action, and what action may he have?  He has it "in the same mannner as he would have if such joint tenancy or tenancy in common did not exist."  Now, exclude from the mind the idea and the fact of joint tenancy or tenancy in common.  The statute puts them out of the way, and says, "the party shall have his action," as if they did not exist.  Therefore we come to this situation :  The defendant in this case, with no joint relations to the plaintiff, goes upon the plaintiff's property, and assumes and exercises exclusive ownership over it, works it in its own manner, subject to its own approval only, takes the ore from the same by its own methods, and plaintiff sees its own property being used and consumed against its will and consent.

Having, by reason of the statute, gotten the question of joint tenancy and tenancy in common out of the way, we are of opinion that it cannot be questioned that the injunction would lie; and we are of opinion that the statute intended that it should, and that for a plaintiff in the position of this one, having any appropriate remedy to enforce its rights, injunction is an appropriate remedy.

Counsel argued that plaintiff would have an ample remedy in an action for accounting or for damages.  It occurs to us that such remedy would be very inadequate, and such defense to an injunction would not successfully be urged if the action were between parties other than cotenants.  An accounting would be a remedy exceedingly difficult of application.  A defendant would be in possession of the property; could mine as it saw fit, could keep books, or not, as it chose; and the burden of proving a great mass of facts and figures and accounts would be thrown upon the plaintiff, when the knowledge of them all would be peculiarly with the defendant.  We do not hold that taking out the ore would be waste, but we do hold that at least it would be a use which consumes, and the only adequate remedy against the dangers to plaintiff of such a use is injunction.

We are of opinion that the intent of the statute is plain.

We know of no other logical construction which we can give, if, indeed, what we have said may be called a construction. We are rather of opinion that the statute speaks plainly, and that our construction is little more than a verbose statement of what the statute sets forth.

The argument of public policy has been made with some force. It is said that if a co-owner of $\frac{3}{4}$ may enjoin his co-owner of $\frac{1}{4}$, as in this case, the owner of $\frac{1}{100}$ may enjoin the owner of $\frac{99}{100}$ under the facts existing in this case. This is probably true. This may be good policy, or bad, but it is the declaration of the legislature, and to that body appeal must be made upon questions of policy. But there is an argument of policy on the other side, and in favor of the statute; for if the injunction be granted, the property is preserved, and is in sight, in kind and quantity, when the litigation is over. It is much simpler to do complete justice upon the determination of a lawsuit, if the property has been preserved in its integrity, then it would be to ascertain value and damages after the ore had been mined, reduced and disposed of exclusively by one party.

There are some expressions in the California Reports, that it is the policy of the state to encourage mining, and that, if one cotenant wishes to work the mine, he should be allowed to do so. It is true that it is the policy of this state to encourage mining. It is also its policy to encourage many other industries. But, as noted above, the question of what policy will best preserve mining rights and interests is a matter for the legislature to determine, and in our opinion that department of the government has spoken very clearly in section 592, Code of Civil Procedure, 1895. The result of our inquiry is that the order of the district court granting the preliminary injunction must be affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.