G. V. B. MIN. CO. v. FIRST NAT. BANK OF HAILEY (BROWN et al., Interveners).

(Circuit Court of Appeals, Ninth Circuit. May 2, 1899.)

No. 507.

1. MORTGAGES—EARNINGS UNDER RECEIVER—RIGHTS OF LESSEE.
    One who leases mining property from a corporation with full knowledge of a prior mortgage thereon, which is contested by the corporation, takes subject to all rights of the mortgagee; and, where the validity of the mortgage is sustained, he is not entitled to claim the proceeds of the mines while operated by a receiver appointed in a foreclosure suit, as against the

mortgagee, on the ground that he expended money to render them productive.

2. MINING PARTNERSHIPS—LIEN OF PARTNERS.

The law of mining partnerships, as declared by the courts or by the statutes of Idaho, does not entitle a mining partner to a lien on the product of a mine for his share of past profits made by his partners while he was excluded from the property, as against a mortgagee of the interests of such partners, although he will be entitled to his share of the product while the mine is operated by a receiver appointed in a suit to foreclose the mortgage.

Appeal from the Circuit Court of the United States for the District of Idaho.

A. F. Montandon, for appellants G. V. B. Min. Co. and Henry Aplington.

Lyttleton Price, for appellant First Nat. Bank of Hailey.

Arthur Brown, in pro. per.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge.   Pending the foreclosure suit of G. V. B. Min. Co. v. First Nat. Bank, 95 Fed. 23, a receiver was appointed by the court to take charge of the proceeds of ore from the Red Elephant group of mines, then operated by Henry Aplington under a lease from the mining company.   The amount of money from the proceeds of the ore thus extracted that came into the hands of the receiver was $7,617.34.   Arthur Brown and Henry Aplington have each separately intervened in the suit of foreclosure, and claim the money realized from the proceeds of the ore thus extracted.   Brown claims all of it.   The court gave him one-third.   He appeals from the order of the court refusing to give him the other two-thirds.   Aplington admits that Brown is entitled to one-third, but claims the other two-thirds.   The court refused to allow him any part of it.   He appeals from this ruling of the court.   The bank claims all of it.   The court gave it two-thirds.   It appeals from the order allowing Brown the one-third.   89 Fed. 449.

Who is entitled to this money?   What are the facts?

1. Aplington claims the two-thirds by virtue of the lease which was given him by the G. V. B. Mining Company, the facts in regard to which are sufficiently stated in the statement of facts in the foreclosure suit, and in support of his claim asserts a right thereto on account of the time, labor, and expense by him incurred in working the mines, and producing the money from the ores extracted therefrom, which, he claims, were far in excess of the value of the money derived therefrom.   It is clear that, as against the bank, he is not entitled to anything.   The bank did not employ him.   It had nothing to do with the leasing of the property to him.   His rights in the premises depended solely upon the ground that Thurber would, under the name of the mining corporation, be able to defeat the lien of the bank's mortgage. He took his chances, and must abide the consequences which he voluntarily brought upon himself.   When he took the lease, he had full

knowledge of the bank's mortgage.   He knew it was prior in time to any right or claim he had.    The mortgage, having been declared valid, constitutes a prior lien upon the property.    The bank had the right to have a receiver appointed to take all moneys from the proceeds of ore, and hold the same to abide the result of its foreclosure suit, and, if successful, it was, as against Aplington, entitled to all the money.

2. The facts upon which Brown claims all the money are substantially as follows:   Prior to September 22, 1888, G. V. Bryan, George W. Venable, and George H. Roberts were mining partners working the Red Elephant group of mines.   About that time Roberts executed a deed of trust in favor of the First National Bank of Hailey to secure a promissory note in the sum of $1,500.    Bryan and Venable thereafter bought the deed of trust from the First National Bank of Hailey, advertised the property for sale, and sold it on the 17th day of August, 1889.   It was bought in for the benefit of Bryan and Venable, and they subsequently became the owners of the right purchased under that deed of trust.    After August, 1889, Roberts was excluded from the property.   Within six months after this sale, under the deed of trust as it is termed, Roberts conveyed and assigned all his rights, interest, equities, and accounts to Brown, who made tender of the amount due to Bryan and Venable, and demanded a conveyance of the one-third interest, and to have the title obtained by them by the foreclosure of the deed of trust set aside.   Bryan and Venable refused to recognize Brown or any rights which he had in the property.   Brown thereafter commenced suit in the district court of the territory of Idaho to set aside the pretended title in Bryan and Venable to this one-third interest, also claiming that there was a right of redemption, as in the case of any other sale, the tender having been regularly made upon the amount due upon said trust deed.   The suit in the district court was decided against him.   He then took an appeal to the supreme court, and succeeded in having the judgment of the district court set aside.   The court, among other things, held that the one-third interest in the mines should be decreed to belong to the maker of the trust deed (Roberts) or to his assignee, Brown.   Brown v. Bryan (Idaho) 51 Pac. 995, 997.   The facts of the conveyance of the property by Bryan and Venable to the G. V. B. Mining Company, and of the subsequent acts of the parties, are sufficiently stated in the foreclosure suit, to which reference is here made.

In the supplemental transcript it appears, from the testimony of Thurber and Brown, that Bryan and Venable and the G. V. B. Mining Company had, at different times between 1889 and December, 1895, extracted over $500,000, in round figures, worth of ore, and that the actual profits from the same were over $100,000.  This ore, it is claimed, had been extracted, and these profits realized therefrom, during the period when Roberts and his assignee, Brown, the intervener, were excluded from participating in the working of the mines.   The suit in the state court, wherein Brown prays for an accounting between the parties, has never been brought to trial upon that issue, and the results that might finally be reached upon a regular trial are, under the facts established in the foreclosure suit, problematical, remote, and uncertain.   But we shall assume, for the purpose of this

opinion, that the intervener Brown has made out a prima facie case
that the profits were as above stated.

Upon the state of facts disclosed by the record, we are of opinion
that Brown is entitled to one-third of the money, on the ground that he
must, in the light of the decision of the supreme court of Idaho, be
treated as the owner of one-third interest in the property and pro-
ceeds.    Is he entitled to the other two-thirds?    His contention is
that he is entitled to a lien upon the property, and funds obtained
therefrom, to secure his share of the profits derived from the working
of the mines by Bryan and Venable and the G. V. B. Mining Company,
because of his relation as a partner with them in the mines; and that
the lien relates back, and took effect at the time Roberts was excluded
from participating in the working of the property and sharing in the
profits, and has continued in full force and effect to the present time,
and is prior in right and time to the lien of the bank's mortgage.

In support of this contention, he relies upon the provisions of the
statute of Idaho, which read as follows:

"Sec. 3300. A mining partnership exists when two or more persons who own
or acquire a mining claim for the purpose of working it and extracting the
mineral therefrom, actually engage in working the same.

"Sec. 3301. An express agreement to become partners or to share the profits
and losses of mining is not necessary to the formation or existence of a mining
partnership.    The relation arises from the ownership of shares or interests in
the mine and working the same for the purpose of extracting the minerals
therefrom."

"Sec. 3305. One of the partners in a mining partnership may convey his in-
terest in the mine and business without dissolving the partnership.    The pur-
chaser, from the date of his purchase, becomes a member of the partnership."
Rev. St. Idaho 1887, p. 385.

The principles in relation to mining partnerships were ably dis-
cussed, and clearly stated, in Duryea v. Burt, 28 Cal. 569, 577, where
it was held that, if two or more persons acquire a mining claim for
the purpose of working the same and extracting the mineral there-
from, and actually engage in working the same, and share, according
to the interest of each, in the profit and loss, the partnership relation
subsists between them, although there is no express agreement be-
tween them to become partners, or to share the profits and losses;
that one of the partners in a mining partnership may convey his inter-
est in the mine without dissolving the partnership; that each member
of the mining partnership has a lien upon the partnership property
for the debts due the creditors of the partnership, and for moneys ad-
vanced by him for its use, which he may enforce in equity, even if
there has been no agreement among the partners that such lien shall
exist.    The delectus personæ, incident to an ordinary partnership,
has no place in such mining partnerships.    This opinion has stood
the test of time, and has everywhere been acknowledged as a leading
case concerning mining partnerships, and has always been followed,
in the absence of any state statute to the contrary.

In Kahn v. Smelting Co., 102 U. S. 641, 645, the court said:

"Mining partnerships, as distinct associations, with different rights and liabili-
ties attaching to their members from those attaching to members of ordinary
trading partnerships, exist in all mining communities; indeed, without them suc-
cessful mining would be attended with difficulties and embarrassments much

greater than at present.   In Skillman v. Lachman, 23 Cal. 203, the question of the relation existing between parties owning several interests in a mine came before the supreme court of California, and that court said that, 'whatever may be the rights and liabilities of tenants in common of a mine not being worked, it is clear that, where the several owners unite and co-operate in working the mine, then a new relation exists between them, and, to a certain extent, they are governed by the rules relating to partnerships.   They form what is termed a "mining partnership," which is governed by many of the rules relating to ordinary partnerships, but also by some rules peculiar to itself, one of which is that one person may convey his interest in the mine and business without dissolving the partnership.'   The same doctrine is asserted in numerous other cases, not only in that court, but in the courts of England.   Associations for working mines are generally composed of a greater number of persons than ordinary trading partnerships; and it was early seen that the continuous working of a mine, which is essential to its successful development, would be impossible, or at least attended with great difficulties, if an association was to be dissolved by the death or bankruptcy of one of its members or the assignment of his interest. A different rule from that which governs the relations of members of a trading partnership to each other was therefore recognized as applicable to the relations to each other of members of a mining association.   The delectus personæ, which is essential to constitute an ordinary partnership, has no place in these mining associations.   Duryea v. Burt, 28 Cal. 569;  Settembre v. Putnam, 30 Cal. 490;  Taylor v. Castle, 42 Cal. 367."

See, also, Thomas v. Hurst, 73 Fed. 372, 374;  Bissell v. Foss, 114 U. S. 252, 260, 5 Sup. Ct. 851;  Jones v. Clark, 42 Cal. 180;  Charles v. Eshleman, 5 Colo. 107, 111;  Manville v. Parks, 7 Colo. 128, 133, 2 Pac. 212;  Higgins v. Armstrong, 9 Colo. 38, 46, 10 Pac. 232;  Meagher v. Reed, 14 Colo. 335, 354, 24 Pac. 681;  Patrick v. Weston, 22 Colo. 45, 49, 43 Pac. 446;  Nolan v. Lovelock, 1 Mont. 224;  Anaconda Copper-Min. Co. v. Butte & Boston Min. Co., 17 Mont. 519, 523, 43 Pac. 924; Kahn v. Mining Co., 2 Utah, 174, 218;  Lamar's Ex'r v. Hale, 79 Va. 147, 160;  2 Lindl. Mines, § 796 et seq.

In the cases cited the court was dealing with a partnership that was actually engaged, as such, in the working of the mining claim owned by them; and in such cases it is held that a partner who advances money to the partnership would have a lien therefor by virtue of his known relation, and, if he advances any money to the creditors of the partnership, he would have a lien on the property therefor. This lien does not necessarily spring from any agreement between the partners, but is created by operation of law upon the partnership relation.    Under the rule announced in Duryea v. Burt, any partner in such a mining partnership "has a specific lien on the partnership property, not only for the debts and liabilities due to third persons, but also for his own share of the capital stock and funds, and for all moneys advanced by him for the use of the concern."   If Brown, as a partner, had paid a debt due to a creditor of the partnership, he would, of course, be entitled to a lien on the property or other funds of the partnership,—or, if he had advanced any money for the use of the partnership, he would also have his lien on the entire fund.    But he did neither.    The result is that he is only entitled to a lien for "his own share of the capital stock and funds," which is one-third.    This was given to him by the court.    He claims that his rights must be decided by the provisions of the statute of Idaho.    Admit it.    We find the statute of that state identical in principle, and almost verbatim in language, with the rule announced in Duryea v. Burt, and

similar to the statutes of California, Montana, and other Western states. If any distinction exists, it is against, instead of in favor of, the interveners' contention.

In addition to the sections heretofore cited, we quote sections 3302 and 3303, which read as follows:

"Sec. 3302. A member of a mining partnership shares in the profits and losses thereof in the proportion which the interest or share he owns in the mine bears to the whole partnership capital or whole number of shares.

"Sec. 3303. Each member of a mining partnership has a lien on the partnership property for the debts due the creditors thereof, and for money advanced by him for its use. A lien exists in favor of the creditors notwithstanding there is an agreement among the partners that it must not."

These provisions clearly support the views above expressed. The lien given to the partner upon the property or funds is not for the profits due him, but for the "debts due the creditors" and "for money advanced by him for its use."

That Brown would be entitled to an accounting, as against Bryan and Venable and the G. V. B. Mining Company, is conceded. But there is a distinction between the right to an accounting and his right to a lien as against creditors. He would be entitled to an accounting as a co-owner with the others in the mine, independent of the question as to whether a partnership existed or not. In Kahn v. Smelting Co., supra, which follows the rule announced in Duryea v. Burt, this principle is clearly recognized. The court in that case said: "But, if the relation of the plaintiff to his associates could not be considered as one of a mining partnership, he was still entitled to an accounting from them, if, as alleged by him, he was joint owner with them in the mine." See, also, Hawkins v. Mining Co., 2 Idaho, 970, 28 Pac. 433.

Our conclusion is that Brown, upon the allegations in his petition for intervention and the oral testimony introduced in support thereof, whatever his rights may be, upon an accounting, as against the G. V. B. Mining Company, or Bryan and Venable, whether he be treated as a partner or co-owner with them in the property, or in the profits, if any, which they may have received from their working of the mines during the time of his exclusion from his one-third interest therein, is not entitled to any lien as against the mortgage lien of the bank upon the two-thirds interest in the property and like interest in the money in the hands of the receiver. The bank, upon the decision of the supreme court of Idaho in Brown v. Bryan, relinquished its mortgage as against his one-third interest in the mines. The orders of the court as to the disposition of the money in the hands of the receiver are affirmed, with costs.