### CASEY v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1907.)

No. 1,352.

**RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.**

A street car in Chicago was stopped at a railroad crossing, and the conductor went forward, as required by the rules, to give the signal to the motorman when the crossing was clear. There were six railroad tracks; the first being a side track on which some freight cars were standing near the crossing, and the second the outbound passenger track. There were two inbound trains approaching on the further tracks, so that the crossing could not then be made, and while waiting the conductor was struck and killed by the engine of an outbound passenger train on the second track. The tracks were eight feet apart, and, by standing next to the side track in a place of safety, he could have seen approaching trains on any of the other tracks; outbound trains being visible for 600 feet before reaching the crossing. He was familiar with the crossing, and knew that the outbound train was due, and usually waited for it to pass at that time each day. *Held*, that in unnecessarily going upon the track while waiting he was guilty of negligence which at least contributed to his death, and precluded a recovery therefor as matter of law, regardless of the question of the negligence of the railroad company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1026.]

Grosscup, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

This writ of error is prosecuted from a judgment entered against the plaintiff in error, who was plaintiff in an action to recover damages for the death of his intestate, Thomas Considine, through alleged negligence on the part of the defendant in error, in the operation of its road and trains. Upon the trial, at the close of the plaintiff's testimony in chief, the court instructed the jury "to return a verdict of not guilty." The testimony is preserved, with due exception to the instruction, and the issue for review arises thereupon. No substantial conflict appears in the testimony, and the material facts are recited in the opinion.

William E. Griffen, for plaintiff in error.

Charles B. Keeler, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge. The question whether contributory negligence on the part of the deceased is conclusively established by the testimony is the only one for solution under this record. The fault charged against the defendant railroad company—in the speed of the train, its "Southwest Limited," which caused the death, and alleged

insufficient warnings of its approach—as the primary issue tendered by the declaration, was rightly treated in the proceedings before the trial court, as entitled to submission to the jury under the evidence, except for the assumed proof of such contributory negligence. Unless the testimony concurs in a state of facts from which palpable fault of the deceased is the only reasonable inference—overcoming the presumption justly raised by the law in favor of the exercise of thought and care for his own safety—that issue was equally within the province of the jury, and the direction of a verdict by the court was unauthorized.

The circumstances under which the fatal injury occurred are substantially these, as shown by the plaintiff's testimony: Thomas Considine, the deceased, was conductor on a street car, engaged continuously for several years upon the route in question, on Chicago avenue, and familiar with the conditions at the railroad crossing. The street car line extends east and west along Chicago avenue, which is crossed diagonally by the defendant's railroad, extending southeasterly and northwesterly, with six railroad tracks, about eight feet apart. Approaching from the east, these tracks were arranged as follows: (1) a side track; (2) an outbound passenger track; (3) an inbound passenger; (4) an inbound freight track; (5) an outbound freight; and (6) a switch track. In the northwesterly direction the right of way reached an elevation by gradual incline, but the inbound trains approaching therefrom were in plain view from the crossing for ample distance. Southeasterly from the crossing, distant about 600 feet, Central Park boulevard crosses the railroad tracks with an overhead viaduct, so that trains (outbound) from the city are not within view until about reaching the viaduct, but for the intervening distance to Chicago avenue crossing the view is clear, as the tracks are substantially straight. Gates were provided at the crossing (operated from a tower) and a flagman was usually stationed there. The street car, in charge of the deceased, arrived at the crossing from the east, on the usual time of its run, about 6:20 p. m., when, as the motorman testifies, they "met the Southwest Limited going out of the city on that track mostly every night." The gates were open, and no flagman was observed. In conformity with his constant practice and duty, the car was stopped east of the crossing, and Considine went forward to ascertain and signal when the way was clear. The testimony is undisputed that a slowly moving freight train, pulled by its engine with headlight burning, was incoming from the northwest, on the inbound freight track, within plain view of Considine, when he started from the car; that the headlight of an engine pulling a passenger train on the inbound passenger track, "coming in much faster than the freight train," was in his view before reaching the tracks; that he looked in that direction, after reaching the second or outbound passenger track (with nothing to obstruct the view), and as well southeastward, where the view was unobstructed up to the viaduct, over 600 feet away. While several freight cars were standing on the easterly side track, south of the crossing, obstructing the view southward from the car, the way was clear, according to all the testimony, from the view point of Considine. All the witnesses who testify up-

on the subject were upon the street car, and concur in the statement that Considine was moving slowly westward over the tracks when last observed by either of them; all mention the closing of the gates, after he had passed them, and before the outbound limited reached the crossing, but do not concur in their estimates of the time. Two mention his looking back towards the gates when they closed. While thus serving as lookout for the safety of his car and passengers in crossing, the outbound limited, running on its usual time and track, came upon Considine, and the engine struck him and inflicted the fatal injuries. No witness called at the trial appears to have seen him when struck; and there is no testimony as to his position or movement when the engine came upon him, nor when he first observed its coming. All concur, however, that he was either in this outbound track, or just beyond (west) of it when last observed. The flagman stationed at the crossing was the first to reach him after the injury, but he was not called by the plaintiff as a witness, nor were any of the trainmen called. So the case rests upon the conceded facts of his long familiarity with the conditions of the tracks and train movements at this hour—with special reference to the daily stop, on the trip in question, for the passage of the limited on the outbound track—his known conduct in going upon or beyond the outbound track, and his opportunities for observing the approach of the train on that track when at least 600 feet away. The conductor was there, not to make the crossing for himself, but to watch for a safe crossing for his car. The oncoming freight and passenger trains from the northward gave ample warning that no passage was open over the west tracks until both had cleared the crossing; and meantime he was not required to go beyond the (east) side track in performance of his duty as conductor. What his purpose was in venturing beyond cannot be known; and the testimony furnishes no reasonable explanation. Nor is it known, or fairly inferable from the facts, why he failed either to stand a safe distance from the track of the limited, then due, or look for it constantly while in the place of known danger. His sole immediate duty was that of care for his own safety. With the train running at 25 or 30 miles an hour (as variously estimated by the witnesses), and no physical disability on his part, ample time would appear for his escape from either position of danger mentioned in the testimony, after the engine passed the viaduct, were vigilant watch kept up; and his obligation to such exercise of care, under the circumstances, is not open to question. No escape appears from the conclusion that this obligation was violated in any aspect of the testimony; and thus the negligence of the deceased was a contributory cause of injury, to say the least.

In Dunworth v. Grand Trunk Western Ry. Co., 127 Fed. 307, 309, 62 C. C. A. 225, 227, Judge Jenkins, speaking for the court in reference to like circumstances, pertinently remarks:

"Such conduct, can be characterized only as reckless. Without necessity, he deliberately placed himself in a situation of known danger. In the open space he would have been immune from danger, and with equal facilities for seeing in both directions. He had no right to stand upon the track. Taking the risk, the consequences should not be imposed upon another. Railroad Company v. Houston, 95 U. S. 697, 24 L. Ed. 542; Schofield v. Railway Company,

114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Northern Pacific Railroad Company v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014."

The case at bar is unmistakably within the ruling in the above-mentioned case, with the proof of contributory negligence, or needless risk assumed, greatly strengthened by the conceded facts, (1) that the limited train was due immediately, on the track in question; and (2) that the deceased was long familiar with such expectation, and had usually stopped for the train at that time and place. The common-law rule of contributory negligence as a bar to recovery may be set aside by legislation, but not by judicial means. Courts are to administer justice between parties in conformity with established law, without departure for individual views of hardship, either in the rule or its application.

The judgment of the Circuit Court, accordingly, is affirmed.

GROSSCUP, Circuit Judge, dissents.