CASCADEN v. DUNBAR et al.

(Fourth Division. Fairbanks. December 28, 1909.)

No. 165.

1. NEW TRIAL (§ 117*)—MOTION—TIME FOR FILING.

Carter's Ann. Code Civ. Proc. § 228, requiring motion for new trial to be filed within 20 days of filing of a decision in vacation, except in certain cases, applies to equity cases as well as actions at law.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 117.*]

2. NEW TRIAL (§ 116*)—MOTION—TIME FOR FILING.

Under Carter's Ann. Code Civ. Proc. § 228, requiring motion for new trial to be filed within 20 days of filing of a decision in vacation, except in certain cases, a motion, filed March 22d, to set aside a judge's findings, conclusions of law, and decree, and a motion, filed April 5th, to alter, complete, and correct such documents, are in time, where such documents were signed in vacation January 24th, but were not filed until March 19th.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 116.*]

**3.** JUDGMENT (§ 297*)—CORRECTION—POWER OF SUCCEEDING JUDGE.

A new judge can entertain motions to set aside, or to alter, complete, or correct, findings, conclusions, and a decree entered by his predecessor, where the entire record on which they were based is before him.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 297.*]

**4.** JUDGMENT (§ 248*)—VALIDITY—NONSUPPORT BY PLEADINGS AND PROOF.

A decree, not supported by the pleadings or proof, is void.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. § 248.*]

**5.** APPEAL AND ERROR (§ 1203*)—DISPOSITION OF CAUSE—REMAND—ACCOUNTING.

A judgment on appeal, directing award of an undivided one-half interest in mining claims and an appropriate interest in the proceeds thereof, authorizes an accounting as to the proceeds.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1203.*]

**6.** APPEAL AND ERROR (§ 1203*)—PROCEEDINGS ON REMAND—ACCOUNTING.

Where plaintiff has been awarded an interest in mining claims after mandate on appeal, an account may be taken as to gold extracted by defendants, if the pleadings justify it, though no evidence of extraction was offered at the original trial.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1203.*]

**7.** ACCOUNT (§ 17*)—PLEADING—SUFFICIENCY.

A complaint to recover an interest in mining claims and for accounting, alleging that defendants were extracting gold from the mine, which the answer admitted, warrants an accounting as to plaintiff's interest in the mine's output since commencement of the suit.

[Ed. Note.—For other cases, see Account, Dec. Dig. § 17.*]

**8.** MINES AND MINERALS (§ 50*)—ESTABLISHMENT OF RIGHTS—PRESUMPTIONS—OPERATION OF MINES.

In a suit to recover an interest in a mine and for an accounting as to its output, it must be assumed that no gold was

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

extracted before the suit, where there is no evidence, and plaintiff does not claim, that any was extracted.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 50.*]

9. MINES AND MINERALS (§ 50*)—MINING CLAIMS—INTEREST IN OUTPUT—ESTOPPEL.

One recovering a one-half interest in a mine is entitled to one-half of the royalties received from lessees by defendants, and not one-half of the gross output, where he did not seek injunction against operating the mine until after judgment, and where he agreed not to interfere with the lessees.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 50.*]

10. VENDOR AND PURCHASER (§ 228*)—BONA FIDE PURCHASERS—NOTICE.

Persons having purchased a mining interest, with notice of plaintiff's claim of an interest, purchased subject thereto.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495–501; Dec. Dig. § 228.*]

11. MINES AND MINERALS (§ 50*)—INTEREST IN OUTPUT—RIGHT TO RECOVER.

On recovering a one-half interest in a mine, plaintiff is entitled to recover from defendants royalties received by them in excess of their interest.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 50.*]

12. LIS PENDENS (§ 22*)—SCOPE.

An action can only serve as a lis pendens over the property in controversy, and hence one suing for and recovering a one-half interest in a mine, and an accounting, is not entitled to claim the whole output as against an assignee of part of it, on account of past conversions by defendants, where plaintiff did not disclose an intent to claim the whole.

[Ed. Note.—For other cases, see Lis Pendens, Dec. Dig. § 22.*]

13. RECEIVERS (§ 103*)—RIGHT TO ACQUIRE INTEREST IN FUND.

One who was appointed receiver of a fund in litigation, to hold it until further order, though agreed upon by the parties.

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

3 A.R.—43

was bound to take notice that the whole fund was involved, and an assignment to him of an interest in the fund pending his receivership was void as against plaintiff, who recovered an interest therein.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 190; Dec. Dig. § 103.*]

Suit by David H. Cascaden against George F. Dunbar and others. On motion by defendants F. G. Manley and A. C. Rice to set aside the findings, conclusions of law, and decree after mandate on appeal, and on motion by plaintiff to alter, complete, and correct the findings, conclusion, and decree. Decree directed.

H. J. Miller and Ferdinand De Journel, for plaintiff.

W. H. Adams, for defendants Manley and Rice.

McGinn & Sullivan, for defendants Bennett, Scott, and Dunbar, and S. A. Bonnifield, their assignee.

LYONS, District Judge. On the twenty-fourth day of January, 1909, Hon. Silas H. Reid, the then presiding judge of this division of the district of Alaska, made findings of fact and conclusions of law and signed a decree in the above-entitled cause. Said findings, conclusions of law, and decree were signed on the twenty-ninth day of January, 1909, at Valdez, Alaska (then within this jurisdiction), in vacation, and were forwarded by Judge Reid to the clerk of this court at Fairbanks, and by the clerk received and filed in this cause on the 19th day of March, 1909. Thereafter, and on the 22d day of March, 1909, the defendants Manley and Rice, by their attorney, W. H. Adams, filed a motion to set aside the findings, conclusions, and decree so made and filed, and thereafter, on the 5th day of April, 1909, the plaintiff filed his motion in this cause to alter, complete, and correct said findings, conclusions, and decree.

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

Before passing on the merits of the respective motions, it becomes necessary to inquire as to the power of the court as now constituted to entertain said motions. The plaintiff contends that the present judge of this court, to whom these motions are addressed, not being the same judge who entered the findings and conclusions and signed the decree herein, is without power to set the same aside, but that he has power to correct the same for the purpose of making them conform to the pleadings and proof, and also for the purpose of correcting any apparent clerical errors discoverable in said findings, conclusions, or decree.

Section 228, p. 190, Carter's Ann. Alaska Code, provides as follows:

"Upon a trial by the court, when a decision is given in vacation, a motion for a new trial shall be filed within twenty days from the time of filing such decision, except as hereinafter provided."

The above section is quoted from chapter 22, governing motions for a new trial, which must apply to equitable causes, as well as cases at law. It is therefore apparent that both motions now under consideration, under the provisions of the statute above referred to, have been filed within the time provided by law. But the plaintiff contends that, even though the motion of defendants Manley and Rice was filed within the statutory time, yet this court as presently constituted has no power to entertain the same, for the reason that a different judge is now presiding than the one who entered the findings and decree complained of.

"The power to vacate or open a judgment, or to set it aside, is a common-law power possessed by the court as a part of its necessary machinery for the administration of justice, and hence might be exercised without the grant of special statutory authority." 1 Black on Judgments, § 297.

It is conceded that, if the findings and decree in this cause are void, the court as at present constituted has the power to

set the same aside; but plaintiff contends that the record does not disclose the fact that the judgment is void.

"Where the judge of the superior court who directed the judgment retired from office, and his successor occupied the office at the time when the motion to vacate the judgment was made, the action of the superior court is that of the judge of the court, and a change in the persons who occupied the position does not affect the consideration of the vacation of the judgment." State ex rel. Rucker v. Superior Court, 18 Wash. 227, 51 Pac. 366.

If the entire record upon which the former judge of this court based his findings of fact, conclusions of law, and decree were not before this court at the present time, the court as presently constituted would probably not have the power to review the findings of the former judge; but, since the entire record has been transcribed and is before the court at the present time, there appears to be no reason in law, and certainly none in justice, why the court as at present constituted should not have the power, equal in that regard with that of the judge who rendered the decree, to consider the motions now before this court. But, even though the court as at present constituted has not equal power with reference to the disposition of such motions with that of Judge Reid, were he still the presiding judge of this court, that question becomes immaterial under the view entertained by this court of the decree herein, because it is apparent to the court that said decree is supported neither by the pleadings nor the proof, and for that reason is void, as to the defendants Manley and Rice; and it is equally apparent that the direction in the conclusions of law that "the plaintiff, Cascaden, is entitled to the $51,675.36, less all charges, if any, due the clerk of court," is void, because not supported either by the pleadings or proofs. The objections to this court as presently constituted hearing the motion of the defendants are, therefore, not well taken; for, as this court views the situation, it is his duty to hear and at this time determine both motions.

## On the Merits.

This action was commenced on June 11, 1904, was tried before the court, and a decree entered on the 15th day of June, 1906, which decree awarded to the plaintiff, Cascaden, a one-third interest in and to the various mining claims described in the complaint. Thereafter an appeal and cross-appeal were prosecuted to the Circuit Court of Appeals for the Ninth Circuit, and that court, on the 28th day of October, 1907, reversed the judgment and decree of this court, and in its opinion incorporated the following directions to this court:

"The judgment is reversed, and the cause remanded to the court below, with directions to award the plaintiff an undivided one-half of the interest of the defendants in the claims relocated by the defendant Dunbar in May, 1903, and his appropriate interest in the proceeds thereof, if any." 157 Fed. 66, 84 C. C. A. 570.

Prior to the commencement of the action originally, and on the 7th day of May, 1904, the defendant Bennett conveyed all of his right, title, and interest in and to all of the property described in the complaint to the defendants Scott and Dunbar. On the same date the defendants Scott and Dunbar attempted to convey a one-third interest in all of the properties described in the complaint to the defendants Manley and Rice; but by their deed of conveyance they provided that it was the intention and meaning of said instrument to convey an undivided one-third interest of whatever interest the said Scott and Dunbar held in the properties at that time. Since it has been determined by the appellate court that defendants Bennett, Scott, and Dunbar owned only a one-half interest in the properties, the deed of Scott and Dunbar to Manley and Rice could convey to the grantees therein only a one-sixth interest in the properties.

On or about the 15th day of September, 1905, this court, at the instance of the plaintiff, granted an injunction against the defendants, their agents, servants, and employés, from

worl;ing the properties described in the complaint and extracting tne gold therefrom pending the appeal, but providing that, if the parties could agree upon some responsible person to hold the royalties or receive the issues and profits of said mining operations, said mines might be operated pending the appeal. Thereafter it was agreed by all of the parties that one Donnelly should act as receiver or custodian of the proceeds of such mining operations pending a determination of the rights of the parties on the appeal. Thereafter the said Donnelly was discontinued as such receiver or custodian, and the parties agreed on one Clement Alexander for the like office; and later, on December 15, 1906, by stipulation between the parties, one S. A. Bonnifield was agreed upon and appointed by the court for the purpose of receiving said royalties and proceeds and holding the same pending the outcome of the appeal.

On the 20th day of August, 1906, the defendant Dunbar, having theretofore acquired all of the interest of the defendant Scott in the property in controversy, for the purpose of securing a note for the sum of $30,000 made and executed in favor of one E. T. Barnette by defendant Dunbar and one J. C. Kellum, executed and delivered to the said E. T. Barnette a mortgage upon all of his right, title, and interest in and to placer claim No. 12a below discovery, right limit of Cleary creek, and also upon said date assigned to the said E. T. Barnette all of his right, title, and interest in and to three pokes of gold dust then on deposit with the First National Bank of Fairbanks, Alaska, aggregating 1,214.51 ounces of gold dust, which mortgage and assignment of gold dust was thereafter assigned by said Barnette on the 19th day of September, 1906, to the said S. A. Bonnifield. Thereafter the said Bonnifield loaned to defendant Dunbar the sum of $10,320, which said sum became payable on the 19th day of May, 1907, and for the purpose of paying said note the said Dunbar did thereafter by an assignment in writing transfer to the said Bonnifield all of his right,

title, and interest in and to the gold dust then in the possession of said Bonnifield as trustee as aforesaid and all of such gold dust as should subsequently come into his possession by virtue of said trust.

On the 1st day of July, 1907, the defendant Rice transferred to Bonnifield all of his right, title, and interest in and to said gold and gold dust belonging to him and held by said Bonnifield as trustee in this action, which said assignment was in writing, and on the date last mentioned the said Rice transferred all of his right, title, and interest in and to said placer mining claim above described to Bonnifield. Thereafter, and on the 12th day of September, 1907, the defendant F. C. Manley, being indebted to Bonnifield, directed Bonnifield to apply all of his (Manley's) interest in and to the gold and gold dust then in the hands of Bonnifield as trustee to the payment of an account which the said Manley owed to Bonnifield.

It appears, therefore, that Bonnifield has acquired from the defendants all of their right, title, and interest in and to the gold and gold dust now in his possession as trustee, the whole of which is valued at $51,675.36.

The foregoing is, in brief, a statement of what has transpired with reference to the property in controversy since the commencement of the action, and, obviously, the questions to be determined are:

(1) The authority of the court under the directions contained in the ruling of the appellate court to determine all of the controversies between the plaintiff and defendants;

(2) If this court has authority, under the ruling of the appellate court and the pleadings in this case, to adjudicate all of the remaining differences between the parties, what judgment plaintiff is entitled to with respect to the defendants and each of them; and

(3) Who is entitled to the moneys delivered by the lessees to the different custodians or receivers and thereafter paid into the registry of this court, where it now remains on deposit.

1. With reference to the first question, plaintiff herein contends that the opinion of the Circuit Court of Appeals is tantamount to a direction to this court to grant a hearing for the purpose of making an accounting between the parties, in order to determine the amount due plaintiff from the operation of the placer mining claim since the inception of this action. Defendants insist that, under the ruling of the appellate court, the character and scope of the pleadings herein, and the failure on the part of plaintiff to offer any evidence concerning the output of the mine at the trial of this cause, this court is without authority to take an accounting, and merely has power to distribute among the parties the fund now on deposit in the registry of the court, which fund constitutes the royalties received from the operation of No. 12a below discovery on the right limit of Cleary creek since the entry of judgment in this action by this court in June, 1905.

The language of the appellate court in the paragraph of its opinion heretofore quoted seems to me to plainly direct this court to award to the plaintiff whatever he is entitled to of the proceeds of the mining claims in controversy; and, in order for a court to determine what is due the plaintiff from such operations, it becomes and is absolutely necessary to effect an accounting. In passing, I might say that it is conceded by all parties that said No. 12a below discovery, right limit of Cleary creek, is the only one of the claims in controversy from which any gold has been extracted, so it will be necessary to refer to the claim only in this opinion.

Under the directions of the appellate court, the first matter to be considered is whether or not the pleadings are sufficient in their scope to warrant the court in taking an account between the parties. The defendants insist that, since no evidence was offered at the trial showing that the defendants had extracted any gold from the claim, the plaintiff thereby waived his right to now ask for an accounting; but the court is of the opinion that, if the pleadings are sufficient in their scope to

justify the taking of an account, an accounting should be had at this time, so as to obviate the necessity of another action upon the part of the plaintiff for that purpose. The second amended complaint alleges that at the time of the commencement of the action the defendants were operating the mine and extracting large quantities of gold therefrom. The defendants in their answer admit that they were operating the mine and extracting the gold therefrom. The amended complaint also prays for an account. So it would seem that the pleadings are sufficiently broad and comprehensive to warrant the court, at this time and in this action, in ascertaining the output of the mine from the date of the commencement of the action, for the purpose of determining the plaintiff's interest in the proceeds thereof, if any. And since there is no evidence that any gold was extracted prior to the commencement of the action, and since the plaintiff lays no claim to proceeds extracted from the mine prior to the commencement of his action, it must be assumed, for the purposes of this decision, that prior to that time there was no product extracted therefrom.

2. As to the second proposition—that is, what judgment is the plaintiff entitled to against the defendants and each of them with reference to the entire output of the mine—the plaintiff contends that all of the defendants are joint tort-feasors, and for that reason he is entitled to judgment against them and each of them for his half interest in the entire output of the mine. Defendants Manley and Rice contend that they are not joint tort-feasors with the other defendants, and that the plaintiff has, by his agreements and conduct, approved of the operation of the mines and the letting of the same to divers lessees, and for that reason is not entitled to a judgment against any of the defendants, except for his one-half interest in the royalties extracted from the ground, and is not entitled to a judgment against them (Manley and Rice) for any sum whatsoever. Defendants Scott, Dunbar, and Bennett contend that plaintiff

is not entitled to judgment against them for anything more than a one-half interest in the royalties for the like reason.

In October, 1904, the plaintiff made an agreement with Riley, O'Malley, and Donnelly, who were then working the property in question as lessees, in which agreement he undertook to refrain from interfering with them and their operations, showing conclusively that he was satisfied with them as lessees, and satisfied with the amount of royalties they were paying under the said lease. Immediately after the appeal had been taken from the original judgment in this cause, this court granted the plaintiff an injunction against the defendants, restraining them and each of them from operating or working the mine unless the plaintiff and defendants could agree upon some responsible person to receive the royalties. Plaintiff did agree with the defendants on different custodians to receive such royalties, clearly indicating that he preferred that arrangement to an injunction at that time. Plaintiff also testified before the court, when an accounting was being taken herein, that he did tell one Mr. Kinettle, during the time the latter held a lay upon a portion of claim No. 12a below discovery on Cleary creek, that, "if he were in a position, he might give them a little advance on 30 per cent." These admissions and conduct on the part of plaintiff, coupled with the fact that at the time of the commencement of the action in this court he failed to secure a restraining order against the defendants or their lessees, nor did he at any time during the pendency of this action secure such restraining order until after judgment was entered, would indicate that he was satisfied, in the main, with the way the property was being worked and with the percentage paid to the lessors as royalties.

It would appear, therefore, that the plaintiff is entitled to a one-half of the royalties received from the operation of the mine, and that, under the circumstances, the rule securing to him a one-half of the gross output of the mine would not seem

to be justified, under the circumstances and his own attitude in the premises.

But what judgment is plaintiff entitled to as against Manley and Rice? Are they in the same position as the other defendants? The other defendants were joint tort-feasors, as held by the appellate court. They conspired and confederated for the purpose of defrauding the plaintiff out of his property. Is there any evidence to indicate that Manley and Rice had any part in such conspiracy? They obtained their interest in the mine shortly before the commencement of the action, and paid a valuable consideration therefor. True, the evidence shows they were aware of Cascaden's claim; but there is no evidence to indicate the extent of their knowledge of his rights in the premises, or to the effect that they aided and abetted in a conspiracy to defraud him of his interest. The complaint merely alleges that, at the time they purchased, Manley and Rice were aware of the plaintiff's claim; and the court so found; but it does not appear from the evidence that they participated in any fraudulent scheme to defraud the plaintiff of his rights. It is true, also, that they denied his title; but they might have done that in good faith. Manley and Rice might have in good faith believed the title of the other defendants to be superior to that of plaintiff. Of course, buying with notice of the plaintiff's claim, they bought subject thereto, and could acquire only such interest as the defendants had to convey. But, because a court should find against them in that respect, it does not follow that they are responsible for all of the gold that was extracted from the mine, nor all of the royalties received therefrom, particularly in the light of the evidence and the circumstances, which indicate a willingness on the part of the plaintiff that the mine should be operated pending the outcome of the litigation, as evidenced by his contract with Riley, O'Malley, and Donnelly, October, 1904. Plaintiff had it in his power at all times pending the litigation to procure the restraining of

operations, and thereby to protect himself against any conver-
sions on the part of defendants Bennett, Scott, and Dunbar;
but, instead of having done so, he apparently acquiesced in the
working of the mines.   He therefore should not now be per-
mitted to repudiate his own acts and conduct, and hold Manley
and Rice responsible, in the absence of fraud on their part, for
any greater portion of the output of the mine than that re-
ceived by them over and above their just proportion as co-
tenants.

It is conceded that Manley and Rice did acquire, by their
deed from Dunbar and Scott, a one-sixth interest in the prop-
erty, and had a perfect right, unless restrained, to participate
in the operation of the mine and in the proceeds thereof to the
extent of their said interest; but since it is also conceded that
they received a one-third interest of the royalties of the mine
from the date of the inception of the suit until the time that
mining ceased thereon, and since they were in reality the own-
ers of only one-sixth thereof, it follows the plaintiff is entitled
to judgment against them, and each of them, for a one-sixth of
all the royalties or rents received from the operation of said
claim No. 12a below discovery on Cleary.   And, since the de-
fendants Bennett, Scott, and Dunbar are held to have entered
into a conspiracy to cheat and defraud the plaintiff out of his
interest in the mine, and have excluded him therefrom, the
plaintiff is entitled to judgment against them, and each of them,
for a one-half interest in all the royalties resulting from the
operation of the mine from the inception of the suit to the
date upon which mining was discontinued thereon.

3. It is admitted that there is now in the registry of this
court, as royalties from the operation of the mine in contro-
versy, about $51,675.36.   Plaintiff claims that he is entitled to
an order directing the clerk to pay the whole amount to him,
for the reason that the defendants are, with the possible ex-
ception of Manley, insolvent, and that Bonnifield acquired his

interest in said gold dust after he became custodian of the same under the order of this court. Bonnifield admits that the plaintiff is entitled to one-half of the money now in the registry of the court, but asserts that the assignment of the defendants to all of their interest therein was made for a valuable consideration, and that he had no notice of any claim of lien on the part of plaintiff against the same.

As heretofore stated, the defendant Dunbar, who had theretofore acquired all of the interest of defendant Scott, on the 20th day of August, 1906, executed and delivered to one E. T. Barnette a mortgage of all his right, title, and interest in and to No. 12a below discovery on the right limit of Cleary creek, and also assigned all of his right, title, and interest in and to certain gold dust then on deposit in the First National Bank of Fairbanks, said gold dust being held at that time by one Clement Alexander as trustee, pending the further order of this court. Said Barnette thereafter, and on the 19th day of September, 1906, sold and assigned all of his right, title, and interest in and to the said mortgage, note, and gold dust to the said S. A. Bonnifield.

It will be observed that Bonnifield did not become trustee of said fund until December 15, 1906, when, by agreement of all the parties herein, by their attorneys, he was appointed by the court as trustee of the funds in suit to succeed the said Clement Alexander. At the time that said Dunbar made said mortgage he owned a one-third interest in the mine, and had a right to mortgage the same to Barnette, or to any other person. Plaintiff contends, however, that any assignment by the defendants, or either of them, of any portion of the royalties in the custody of the court, was absolutely void as to him; for, he claims, the action in itself was notice to Bonnifield and others of his claim to the mine and its proceeds, and therefore they cannot be considered as innocent purchasers or innocent assignees for value. It is apparent that the mortgage and assignment given by Dun-

bar to Barnette covered all of his interest in the mine, as well as all his interest in the gold dust then in the hands of the trustee.

The weakness in the plaintiff's contention is the fact that the action could only serve as a lis pendens over all the property in controversy. By his action the plaintiff claimed only a one-half interest in and to No. 12a below discovery on Cleary creek. By proper steps he might have, at the commencement of the suit, or any time thereafter pending the same, prevented the working of the mine by injunction, and thus preserved the status of the property pending the determination of his claim. But the plaintiff asked for no preliminary restraining order or injunction, the mine was worked, and a portion of his property was converted by the defendants.

It cannot be contended but what the defendants were the owners of an undivided one-half interest in the property in controversy, and had a right to sell or dispose of such interest. If they attempted to dispose of anything in excess of such one-half interest, the purchaser would be advised, and was advised, by virtue of the pendency of plaintiff's action. But the action could not serve as a lien on any portion of the property, except the property in controversy.

A question very similar to the one herein involved came before the United States District Court for the District of Idaho in the action of First National Bank of Hailey v. G. V. B. Min. Co., 89 Fed. 449. In that case, among other things, the court says:

"Intervener Brown, in support of his claim for all the funds, said that these parties had legal notice of his ownership of the one-third interest in the mines; that he, as the successor of Roberts' interest, became a mining partner with his co-owners in working the mines, and they together constituted a mining partnership; that such working resulted in large profits, to the one-third of which he is entitled, but which was not paid him; that he has a lien for the unpaid profits due him upon all subsequently extracted ores, and he claims this,

not only against his co-tenants, but also as against their creditors, including the bank.

"It may be here suggested that there is nothing in this record to indicate any bad faith on the part of the bank in taking this mortgage. In fact, not only the bank, but all the parties, were from the great weight of judicial decision, including a pointed and direct decision of the Supreme Court of the United States rendered prior to the execution of the mortgage, justified in believing that Bryan and Venable had succeeded to the title of Roberts, and that the mining company had the right to mortgage all the mining property. Also it may be suggested that the debt was incurred, and that the mortgage was executed by the mining company which was operating the property, in the usual course of business, and, so far as appears, in good faith by all the parties.

"If this were a claim by Brown against his co-tenants, there could be no doubt he could have a claim against present ore proceeds for the payment of past unpaid profits due from his co-tenants. He urges that the bank not only should have taken notice of his title to the one-third of the mines, but also should have taken notice of the state of the account between him and his co-tenants.

"It was a hardship to the bank to find one-third of its security swept away, but to this any citizen is liable, when his construction of the law differs from that of a controlling court; but to lose all of its security because it failed to examine for past years the private accounts of these parties, which were in no sense public records, or in any legal way accessible to an examination by the bank, would seem a greater hardship than the law imposed. Mortgagees, for the validity of their security, may rely upon facts appearing in legal public records, and are not bound by those of a private nature existing between parties, unless they have actual notice thereof."

There is no evidence in this record that Bonnifield knew of the condition of the private accounts between the plaintiff and defendants in this action at the time he took the assignment of the Dunbar mortgage from Barnette; and a careful examination of all the proceedings in the cause could not have disclosed to him that the plaintiff intended to rely on the future output of the mine to liquidate past conversions by the defendants, for when the action was commenced no preliminary

restraining order was asked for. The action was tried, and no evidence offered to the effect that there had been any conversion of proceeds by the defendants or either of them. The pleadings disclosed the fact that only a one half interest in the mine was in controversy, and that no attempt had been made by the plaintiff to subject the other half interest in the mine or the output thereof to a lien, to satisfy any judgment which he might thereafter procure against the defendants.

For this reason, the contention of the plaintiff now, that he is entitled to all the fund in the registry of the court as against the assignee, Bonnifield, seems untenable under the decision of the court last cited. An appeal was prosecuted from that decision to the Circuit Court of Appeals for the Ninth Circuit, and was by that court duly affirmed in 95 Fed. 35, 35 C. C. A. 510.

"The general policy of registration laws in the United States is to protect innocent purchasers against all liens upon and interest in real property not capable of ascertainment by an examination of the public records of the county in which it is situated. Therefore an innocent purchaser from a co-tenant, or one having a lien upon his moiety, will not, we apprehend, ever be permitted to suffer from a claim against the co-tenant of which he had no notice in fact, and of the existence of which he could obtain no information by searching the public records." Houston v. McCluney, 8 W. Va. 135; Burns v. Dreyfus, 69 Miss. 211, 11 South. 107, 30 Am. St. Rep. 539; Welch v. Ketchum, 48 Minn. 241, 51 N. W. 113; Stover v. Cory, 53 Iowa, 708, 6 N. W. 64; Flack v. Gosnell, 76 Md. 88, 24 Atl. 414, 16 L. R. A. 547, 35 Am. St. Rep. 413, and extensive note.

The court therefore concludes that, under the evidence, the assignment of the Dunbar mortgage to Bonnifield was valid, and that such assignment carried with it to Bonnifield the interest of Dunbar in the output of the mine, which, at the time of his mortgage, was a one-third interest.

It is urged by the plaintiff, however, that the assignment of Manley and Rice of their interest in the fund now in the regis-

try of the court was made after Bonnifield became a trustee of the fund. Bonnifield contends that he was not a regular receiver appointed by the court, but was a custodian of the money agreed upon by all of the parties to the suit, and that he had no notice or knowledge that Cascaden had any claim or lien, or any right, to any portion of said fund, except to the extent of a one-half thereof, and that for that reason he had the right, even while acting as custodian of the fund, to receive an assignment of any portion thereof which was not in controversy. However, while it is true that Bonnifield was custodian of the fund and agreed upon by the parties for that purpose, yet at the instance of the attorneys for all of the parties the court appointed said Bonnifield as such custodian on the 15th day of December, 1906, prior to the time he received the assignment of the Manley and Rice interest in the fund. It would seem, therefore, that he, having been appointed by this court to receive the fund and hold it until the further order of this court, whether by agreement of the parties or otherwise, was obliged to notice the fact that there was some controversy over the entire fund, and he was to hold it subject to the rights of the parties in the outcome, intact. For that, if for no other reason, he should not have attempted to acquire any interest in such fund.

"The general rule is well settled that a trustee is not to be permitted to purchase the trust property at his own or at a judicial sale, either directly or through a third person; and where he does so the cestui que trust may, at his option, hold him responsible as a constructive trustee, thereby acquiring the full benefit of the purchase. This is a rule of universal application to all persons occupying a fiduciary position. The underlying principle is that no person can be permitted by a court of equity to purchase property, where he has a duty to perform inconsistent with the character of purchaser." 15 Am. & Eng. Ency. of Law, p. 1197.

It will also be observed that the order of this court appointing Bonnifield receiver directed him to "hold said money until

3 A.R.—44

the further order of this court." That of itself was sufficient to enjoin him from either acquiring an interest in the fund himself or from attempting to dispose of it in any other manner than thereafter directed by the court. The order directed him, in plain terms, to hold the fund, and makes him a trustee for the same, by which he is prevented from either acquiring or disposing of an interest therein without the order of court or the express agreement of the party or parties entitled thereto. 4 Pomeroy, Eq. Jurisp. §§ 1334-1336.

For the foregoing reasons, it must be apparent that this court, when it appointed Bonnifield as receiver of the funds, did not contemplate that he should attempt to acquire any interest therein, since he became a trustee thereof to hold the same until the further order of court. It follows that the assignment of the Manley and Rice interest in the registry fund as proceeds of the operation of the mines was void as against the claim of the plaintiff. The plaintiff, Cascaden, is therefore entitled to two-thirds of the fund now in the registry of the court, and the interest of Manley and Rice therein, amounting to a one-sixth of the whole sum in registry, to be applied by the plaintiff upon the judgment which is herein directed to be entered in his favor against Manley and Rice. The remaining one-third of said registry fund is the property of the said Bonnifield, and he is entitled to an order directing the clerk to pay the same to him.

Let findings of fact, conclusions of law, and decree of this court be entered in accordance herewith.